[Crim. No. 1664. First Appellate District, Division Two.—May 19, 1932.]

In the Matter of the Application of TELU SEKUGUCHI for a Writ of Habeas Corpus.

Saburo Kido for Petitioner.

Matthew Brady, District Attorney, William W. Murphy, Deputy District Attorney, and Leo J. Cunningham for Respondents.

STURTEVANT, J.—This is an application for a writ of *habeas corpus*. A complaint was filed against the petitioner which charged that on the eighteenth day of April, 1932, the petitioner "did willfully, unlawfully, and lewdly distribute and exhibit obscene and indecent photographs and pictures". He was convicted, the judgment recites, of committing the offense described in the complaint.

The provisions of Penal Code, section 311, are as follows: "Sec. 311. Lewd conduct. Every person who willfully and lewdly, either: . . . 3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or book; or designs, copies, draws, engraves, paints, or otherwise prepares any obscene or indecent picture or print; or molds, cuts, casts, or otherwise makes any obscene or indecent figure; or, . . . " Before attempting to construe the foregoing provision the following rules should be borne in mind: ██ Every statute and code section should be construed with reference to its purpose and the objects intended to be accomplished by it. The language will be so interpreted, if possible, as to aid the design and intent of the legislature and to effectuate the evident objects and purposes of the law. (23 Cal. Jur. 764.) Accordingly the primary rule of statutory construction to which every other rule as to interpretation of particular terms must yield is that the intention of the legislature must be ascertained if possible and when once ascertained will be given effect even though it may not be consistent with the strict letter of the statute. (23 Cal. Jur. 726.) ██ The division of a statute into sections is a purely artificial and unessential arrangement. (23 Cal. Jur. 762.) No doubt punctuation may be considered in reading a statute, but punctuation is never a controlling factor of interpretation and it may be entirely disregarded when necessary to ascertain the true intent and meaning. (23 Cal. Jur. 733.) When it is necessary to effectuate the legislative intent it is equally clear that words or phrases may be changed, added or stricken out. (23 Cal. Jur. 737.)

To ascertain the object of section 311 of the Penal Code we may examine the chapter heading. (23 Cal. Jur. 772.) That heading is "Indecent exposure, obscene exhibitions, books and prints and bawdy and other disorderly houses." Moreover, picking up the statute by its four corners, it will be noticed that is is divided into five subdivisions each of which is addressed to the prohibition of a different exhibition. Returning to the first clause of subdivision 3, it will be conceded at once that it prohibits exhibitions and distributions of the writings there mentioned. As to the second clause and the third clause exhibitions and circulations are not specifically prohibited. ▇ The petitioner therefore claims that he committed no offense. To accept his claim is to assume that the legislature created a chapter prohibiting exhibitions and did so as above mentioned until it came to pictures and figures and that then it merely prohibited the making of them in one's most secret apartment. To adopt that conclusion is to reach an absurdity because next to real life nothing has been the medium of so many lewd acts as pictures, prints and engraved figures. If the semicolons in the body of that subdivision of section 311 of the Penal Code are stricken out no real ambiguity remains. The real meaning then is, "Every person who willfully and lewdly . . . distributes, exhibits, designs, or paints any obscene or indecent picture is guilty of a misdemeanor." As so interpreted the object, shown by the title of the chapter and the body of the act, is given full force and effect. Again, if we do not disturb the punctuation but insert at the beginning of the second clause and at the beginning of the third clause the words "exhibits or distributes", the third subdivision will then read as follows: "3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper or book; *or exhibits, distributes,* designs, copies, draws, engraves, paints, or otherwise prepares any obscene or indecent picture or print; *or exhibits, distributes,* molds, cuts, casts, or otherwise makes any obscene or indecent figure." With these interpolations the statute restricts the exhibition of pictures as it does writings—no more, no less. It will be conceded at once that it is a general rule that in interpreting a statute the function of

a court is not to strike out nor to add to the words used by the legislature. However, that rule is not without well-defined exceptions. In this state the cases are numerous in which the court has in effect read words into a statute. It will suffice to cite a few. (*People* v. *Craycroft*, 111 Cal. 544 [44 Pac. 463] ; *Pool* v. *Simmons*, 134 Cal. 621 [66 Pac. 872] ; 23 Cal. Jur. 737.) The reason for the rule is very clearly set forth by the court of appeals of Kentucky in the case of *Commonwealth* v. *Barney*, 115 Ky. 475 [74 S. W. 181]. At page 184 [of 74 S. W.] the court said: "It is argued for appellee that the very vagueness and uncertainty of the true legislative intent to be gathered from this act warrant its rejection by the court, to the end, at least, that the legislature may provide more clearly what it meant to prohibit. But such is not the rule of construction, and cannot be. It is for the legislature to choose its subjects, and its own mode of expression. It is for the court to interpret the language employed so as to carry into effect the legislative purpose, so far as it may not be unquestionably at variance with the Constitution. It may be said that the work of interpretation must be confined to the construction of the words of the act. But that manifestly falls short of the true office of the courts. The legislature has used certain language to express its purpose. It is the purpose, then, that must be sought for. It will be presumed at the beginning of such an inquiry that the language used will probably best show that purpose. But if it undoubtedly does not, then to stop further inquiry is to probably misapply the legislative will, falling short of its purpose, and maybe, work a positive and unthought-of public evil. The courts, with due regard to the prerogatives of a coordinate branch of government, approach this duty with caution, and with a proper appreciation of the distribution of the powers of the government. But statutes of doubtful meaning must be interpreted, or be subject to final interpretation, in event of controversy as to their true meaning, by the courts established by the organic law for that purpose. The evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject, are all properly considered by the courts in arriving

at the legislative intention, because the legislature must have resorted to the same means to arrive at its purpose. As, in construing a contract, its context is considered from the standpoint and surroundings of the parties when they made it, so, in construing an ambiguous act of the legislature, the court will, so far as possible, consider the matters in hand as if situated with respect thereto as that body was. This may result sometimes in the words used in a statute being transposed, or in some of them being omitted or ignored, or in an interpolation of others where necessary to effect the manifest legislative purpose." In *Baker* v. *Jacobs*, 64 Vt. 197 [23 Atl. 588], the Supreme Court of Vermont was considering a statute that prohibited a party from treating a juror to "any victuals or drink". The court held that such language, considering the object of the statute, prohibited the giving of a cigar. In its decision the court says: "In construing a statute of this kind, as was said in *Ryegate* v. *Wardsboro*, 30 Vt. 746, we are to 'look to the whole and every part of a statute, and the apparent intention derived from the whole, to the subject, to the effects and consequences, and to the reason and spirit of the law, and thus ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the word'. In that case the court quoted with approval from an old book the following summary of the rules of construing statutes: 'In some cases the letter of an act of parliament is restrained by an equitable construction; in others, it is enlarged; in others, the construction is contrary to the letter. In order to form a right judgment, whether a case be within the equity of a statute, it is a good way to suppose the lawmaker present, and that you have asked him this question: "Did you intend to comprehend this case?" Then you must give yourself such answer as you imagine he, being an upright and reasonable man, would have given. If this be that he did mean to comprehend it, you may safely hold the case to be within the equity of the statutes; for while you do no more than he would have done you do not act contrary to the statute, but in conformity thereto.' " It thus appears that it is our duty to construe subdivision 3 as hereinabove set forth.

It follows that the petition for a writ should be denied. It is so ordered.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 3, 1932.