112 P.2d 505

## CITY OF ROSWELL v. HALL.

### No. 4584.

Supreme Court of New Mexico.

March 19, 1941.

James M. H. Cullender, of Roswell, for appellant.

Atwood & Malone, of Roswell, for appellee.

BRICE, Chief Justice.

The appellant was convicted and sentenced to serve a term of forty-five days in jail, for the alleged violation of an ordinance of the City of Roswell, which provides: "Every person, firm or corporation, or agent of any such person, firm or corporation, who shall knowingly lease or let to another any house or building, tent structure, room or apartment, within the City of Roswell, for the purpose of setting up or keeping therein any brothel, bawdy house, house of assignation or prostitution, or who shall allow or permit any prostitute, courtesan or lewd woman to remain in such premises after being notified of the character of such female and that she is practicing or permitting the practice of prostitution therein, *or who shall knowingly permit or allow any prostitute, courtesan, or lewd woman, or any female who has the reputation of having a prostitute as a guest, boarder or lodger in any hotel, in boarding or rooming house,* or who shall permit or allow any prostitute, courtesan or lewd woman, or any female who has the reputation of being a prostitute, courtesan or lewd woman as a guest, boarder or lodger

in any hotel, inn, boarding house or rooming house after being notified of the character of such female and that she is practicing prostitution therein, shall be deemed guilty, etc." (Italics ours.)

■ It is asserted by appellant that the judgment and sentence of the court are not supported by substantial evidence. We have held in numerous cases that if there is substantial evidence to support a judgment or sentence in a civil or criminal case that it will not be disturbed on appeal; and in determining whether there is substantial evidence we will consider only that part of the evidence supporting the judgment, and reject the opposing or conflicting testimony. Viewing the case in this light we find the facts are as follows:

Appellant, as agent for his wife, was assisting her to run and operate a rooming house in the city of Roswell. One Sandra Grant was a guest at this rooming house, plying her vocation as a prostitute, and regularly paying to the appellant 50¢ for each "date" filled by her. About December 1, 1939, Sandra Grant was arrested and charged with vagrancy (prostitution), and the appellant was notified of that fact. She was permitted to leave the city upon her own recognizance, with the understanding that if she returned to Roswell she would be prosecuted on the charge. She went to Clovis, but about January 16, 1940, she returned to Roswell and went to appellant's rooming house and secured a room as a guest. The city police, having heard of her presence in Roswell, inquired of appellant whether she was there; to which he replied that she had been but had left. Later (about 10 o'clock P. M.) the officers, suspecting that appellant had mislead them, returned to the house and found the woman in a room, packing a suitcase to leave, probably because she had been informed that "The Law" was looking for her. There were two men in the room with her. She plead guilty to the old charge and was sentenced; and the arrest, trial and sentence of the appellant followed.

As we construe this ordinance, it is made unlawful thereby: (a) To lease to another any house, room, etc., to be used as a bawdy house; (b) to permit a prostitute to remain in such house or room after being notified of her character and that she is practicing prostitution; (c) to knowingly permit a prostitute, or one who has the reputation of being a prostitute, to be a guest therein; (d) to permit a prostitute or one having such reputation to become a guest therein after notice of her character and that she is practicing prostitution therein.

■ There was no testimony that the woman was practicing, or that she intended to practice, prostitution in the house at the time she was arrested, unless it could be inferred from her previous acts, together with the fact that there were two men in the room at the time of her arrest— a question we need not decide. Referring to that portion of the ordinance italicized by us, it is perfectly clear that the word "having" as used therein is a clerical er-

ror, and that the word "being" was intended. The identical language was used in (d) except that "being a prostitute" is used instead of "having a prostitute," and a comma is place after the word "prostitute." With these changes the italicized portion of the ordinance would read: "Or who shall knowingly permit or allow any prostitute, courtesan, or lewd woman, or any female who has the reputation of being a prostitute, as a guest, boarder or lodger in any hotel, in boarding or rooming house."

When the ordinance is read as a whole, there can be no question as to its intended meaning.

 In construing a statute, a court will disregard punctuation or will re-punctuate to arrive at the legislative meaning, United States v. Shreveport, etc., Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175; Forlini v. United States, 2 Cir., 12 F.2d 631; Ex parte Telu Sekuguchi, 123 Cal. App. 537, 11 P.2d 655. The problem is to determine the intent of the city council, and in doing so courts are not controlled by grammatical rules (Ex parte Washer, 200 Cal. 598, 254 P. 951), or in every case by the meaning of the words used. They may be changed or stricken when necessary to effectuate the legislative intent, Ex parte Telu Sekuguchi, supra; Gandy v. Public Service Corp., 163 Miss. 187, 140 So. 687; Roachell v. Gates, 185 Ark. 350, 47 S.W.2d 35; Protest of Chicago, etc., R. Co., 137 Okl. 186, 279 P. 319; Looney v. Commonwealth, 145 Va. 825, 133 S.E. 753; Foster v. Sawyer County, 197 Wis.

218, 221 N.W. 768; Commonwealth v. Barney, 115 Ky. 475, 74 S.W. 181; Black on Interpretation of Laws, 2d Ed., § 58.

There was substantial evidence to support the judgment of the trial court and it should be affirmed.

It is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.