**BROWN, Price Adm'r, v. GLICK BROS. LUMBER CO. et al.**

No. 3177–PH.

District Court, S. D. California, Central Division.

Dec. 2, 1943.

914

Myer Symonds, of San Francisco, Cal., and John J. Ford, H. Eugene Breitenbach, and Joseph K. Coady, all of Los Angeles, Cal., for plaintiff.

Morris Lavine, of Los Angeles, Cal., for defendant.

HALL, District Judge.

The motion to suppress and return the evidence in the Glick case is granted.

I had hoped to have time to write an extended written opinion and set forth all of my reasons; but the press of other matters will not permit it, and the parties are anxious, of course, that this matter shall get on its way.

I am mindful of the arguments that were made by the Government of the necessity for maintaining all of the guards against inflation; but at the same time I cannot escape the thought that the Bill of Rights was written into the Constitution of the United States by men who had just fought a war. They themselves had completed fighting the War of the Revolution, and drafted the Constitution and wrote the Bill of Rights. I think that they were just as conscious of the necessity for winning wars as we are today. Moreover, I think that they had actual experience in winning one, and saw the necessity for preserving the rights which they delineated in the Constitution and the Bill of Rights, *and* still have the capacity to win wars without destroying those rights.

■ I think the OPA has no right, either in a civil case or a criminal case—that is to say, in anticipation of either one or the other [1]—to go into a man's place of business, or his home, and there examine or take from him records of his business or his personal records. In granting this motion to suppress the evidence we are not cutting off the hands of the OPA from enforcing the law. They can still enforce the law. They can enforce it in the way Congress said they could enforce it. They can get the evidence by subpœna. They can get it in the way that every other case has to be prosecuted by the Government when it is prosecuted under the terms and limits of the Constitution. So that in making this ruling there is no striking down of the OPA, or the efforts of the Government to prevent inflation, or the declared policy of Congress. On the contrary, it is my belief that I am carrying out the express will of Congress and the determination of the whole people that the rights which are part of our liberties and freedom shall be preserved against any and every agency of the Government.

The motion to dismiss is granted.

With particular relation to this matter, I would like to have had the time to extend my reasons. However, in reading the stat-

---

[1] Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A. L.R. 1426; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Jones v. Securities and Exchange Comm., 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015; Go-Bart, etc., Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; In re Pacific Railway Comm., C.C., 32 F. 241.

ute I get a different notion of Paragraph (e) than apparently either the Government or the defendant. That is, Paragraph 205 (e), 50 U.S.C.A.Appendix, § 925(e). And in granting this motion to dismiss, I am not, again, cutting off the hands of the Government, because the way I view the Act the suit can still be brought for treble damages or for thrice the amount, whatever it is, in the appropriate case.

It is clear that the Administrator may bring the action for treble damages *only if* the buyer is not entitled to bring the suit.

The query is then to find out when the buyer can or cannot bring the suit. And the difficulty in ascertaining that revolves around the following phrase: " * * * the person who buys such commodity other than in the course of trade or business may bring an action for $50 or for treble the amount * * *"

It is the contention of the defendant that this provision imposes a penalty, and that it is not clear from its language just when or to whom a person becomes liable for the penalty of treble damages, and that hence the Section (section 205(e) violates the constitutional right to have a penalty defined in clear and unmistakable terms, and that the provision by virtue of its lack of clarity is void.

■ That the imposition of treble damages is a penalty there can be no doubt. The OPA Attorney contended that a penalty can only be imposed in a criminal action. But to hold with this contention is to defy most respectable precedent. Miller v. Municipal Court, 22 Cal.2d ——, 142 P.2d 297, 308, and authorities there cited. And it would be an affront to reason for me to hold that $5,000 collected as a fine (because a man made an overcharge) was penal because the proceeding was labelled "criminal" but that $34,695.18 collected from the defendants for the identical conduct is not penal, because the proceeding is labelled "civil". It is surely, in each instance, the compulsory payment of an arbitrary sum, in the latter case fixed by Congress, and in the former by the Court under a limit, which sum is not intended to recoup any actual damage, but is intended to punish as a deterrent.

The provision permitting the judgment for treble amounts, or $50, whichever is greater, is therefore penal in nature so far as defendants are concerned, although it may be remedial so far as the Administra-tor is concerned. Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; Esposti v. Rives Bros., 207 Cal. 570, 279 P. 423. But it does not necessarily follow that Section 205(e) being penal is void for uncertainty, even though there is lack of clarity.

■ This is so because of some well recognized rules of statutory construction; the first of which is that statutes must be interpreted *if possible* so as to preserve their constitutionality. Parsons v. Bedford, 3 Pet. 433, 7 L.Ed. 732; United States v. Coombs, 12 Pet. 72, 9 L.Ed. 1004; New York, etc., R. R. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613. And every reasonable construction must be resorted to in order to save a statute from unconstitutionality. Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297.

■ The second cardinal rule is that a remedial statute must be construed with reference to the purpose of its enactments, the evils which exist, the remedy prescribed, the objects to be accomplished, and the intention of the law makers. Stewart v. Kahn, 11 Wall. 493, 20 L.Ed. 176. And even though a remedial statute imposes a penalty or forfeiture, it must be construed liberally. Farmers' & M. Nat. Bank v. Dearing, 91 U.S. 29, 23 L.Ed. 196, sustained Section 30 of the Act of June 3, 1864, 13 Stat. 99, which permitted forfeiture of all interest where there was usury and recovery back of double interest paid.

■ Statutory construction is the drawing of conclusions which lie beyond the direct expression of the text. United States v. Farenholt, 206 U.S. 226, 27 S.Ct. 629, 51 L.Ed. 1036. And in addition to the rules above mentioned, there are others which must be kept in mind. The ones here pertinent have been stated as follows: "Statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust and absurd conclusion." In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 680, 41 L.Ed. 1154. "General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter." United States v. Kirby, 7 Wall. 482, 486, 74 U.S. 482, 19 L.Ed. 278. "When

the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory." French v. Edwards, 13 Wall. 506, 511, 80 U.S. 506, 20 L.Ed. 702. "Statutes are not to be so literally construed as to defeat the purpose of the Legislature." United States, to Use of Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 170, 50 L.Ed. 437. "Where the language of the act is not clear, and is of doubtful construction, a court may well look at every part of the statute: At its title, and the mischief intended to be remedied in carrying it into effect." Denn et al. v. Reid, 10 Pet. 524, 527, 35 U.S. 524, 9 L.Ed. 519. Debates on the floor of the house of Congress (Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 Booth v. United States, 291 U.S. 339, at page 351, 54 S.Ct. 379, 78 L.Ed. 836), and the heading of the Statute may be considered. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969, see also United States Sugar Equalization Board, Inc., v. P. De Ronde & Co., 3 Cir., 7 F.2d 981.

A concise general statement of the rules of statutory construction is found in Re Sekuguchi, 123 Cal.App. 537, at page 538, 11 P.2d 655, as follows: "Every statute and Code section should be construed with reference to its purpose and the objects intended to be accomplished by it. The language will be so interpreted, if possible, as to aid the design and intent of the Legislature and to effectuate the evident objects and purposes of the law. * * * Accordingly, the primary rule of statutory construction to which every other rule as to interpretation of particular terms must yield is that the *intention* of the *Legislature* must be ascertained if possible, and, when once ascertained *will be given effect, even though it may not be consistent with the strict letter of the statute*. * * * The division of the statute into sections is purely an artificial and unessential arrangement. 23 Cal.Jur. 762. No doubt punctuation may be considered in reading a statute, but punctuation is never a controlling factor of interpretation, and it may be entirely disregarded when necessary to ascertain the true intent and meaning. * * *" (Italics supplied.)

Applying these rules to the Act, 50 U. S.C.A.Appendix § 901 et seq., I cannot agree with the contentions of the defendant; nor can I agree with the contentions of the attorneys for the Administrator.

It is the contention of the attorneys for the Administrator that a person who buys a commodity at retail may bring an action for treble damages, but that a retailer, who has had to overpay his wholesaler or producer, cannot bring such an action, and that such right belongs exclusively to the Administrator. The result of this contention is to say that a person paying ten cents extra for a small sack of sugar at retail can bring a suit for $50 and thus collect from the retailer five hundred times the amount of the overcharge, but that the retailer, who perchance had had to pay an overcharge on a car-load lot of sugar of $1,000 cannot sue for three times the amount he has had to pay to get the sugar in order to supply the consumer, and that in fact the latter is precluded from any remedy at all, but the OPA takes his right and can sue for three times the $1,000 the retailer has had to pay.

This is so, say the attorneys for the Administrator, because the retailer's purchase of the sugar is "in the course of trade or business," and that the retailer's sale to the consumer is "other than in the course of trade or business." Such construction and its results are unjust in thus permitting a squeeze to be made upon a retailer so as to put him out of business, or induce him to break the law. If a retailer, in order to get commodities to serve his trade, is forced to pay excessive prices, but maintains the ceiling of the OPA in his sales to his consumers, he will ultimately go broke; if he refuses to pay excessive wholesale prices when they are demanded, he puts himself in the position of not being able to get merchandise for his customers, in which event he would also be forced out. If he pays the excessive wholesale prices and in turn overcharges at retail, he will surely go broke by paying some three to five hundred times the amounts as damages which he has overcharged, and be precluded from recouping anything from the one who has overcharged him. While such a result might be calculated to induce the retailer to be extremely alert in obeying the law, common sense and common experience alike expose the absurdity of such a construction of the law.

The literal meaning of the language under discussion produces a result which is

likewise unjust. The act says an individual can sue if he *buys* something *"other than* in the course of trade or business." As just indicated, when a person buys something at retail the sale is made "in the course of trade or business" just as much as when a retailer buys from his wholesaler. So, if an individual were limited in his right to sue for treble damages to a sale made *outside* the course of trade or business, the individual could sue *only when he bought from a bootlegger or black market operator.* Such a result is not only absurd, but is inconsistent with good sense and good morals, as it would mean that Congress has passed an Act which not only would permit a person who in good faith was compelled to pay excesses but which gives a premium of from three to five hundred or more times the amount invested to those persons who would induce others to break the law.

My view of the correct construction of the law is as I announced from the bench: The right to sue for treble damages against any one regularly engaged in business, who has overcharged, either as a producer, wholesaler, or retailer is exclusively the right of the individual or concern having to pay the overcharge, and the Administrator has no right to sue in such instance, but is limited in his right to bring actions for treble damages to suits against black market operators and bootleggers and others not regularly engaged in business.

This conclusion and construction is in my judgment not only consistent with the objects and purposes of the Act, and the declaration of Congress in respect thereto, but is the only one which will save Section 205(e) of the Act from being void for lack of certainty.

The primary intent of Congress was to prevent speculative and excessive price rises, price dislocations, and inflationary tendencies, to aid in winning the war as indicated by its title.

The scheme of the Act is extensive. It generally permits the fixing of prices by the OPA Administrator by Orders and Regulations. Section 205 in all of its subdivisions deals with the enforcement of the Act. Section 205(e) is a provision not ordinarily contained in the penal or "enforcement" sections of the various acts of Congress. It was quite obviously the intent of Congress in permitting suits for treble damages to take as much of the burden of enforcement off of the Governmental Agency as possible and to place it in the hands of the public by giving to persons who were injured in a violation of the law an incentive to compel the enforcement of the law by permitting them to collect damages in three times of the amount of the overcharge or $50, whichever is greater. The Senate Report accompanying the Bill says (77th Congress, Second Session, Senate Report No. 931, January 2, 1942): "Such actions have proved valuable in the enforcement of other regulatory Statutes, such as the Fair Labor Standards Act, *both to relieve the government of a part of the burden of enforcement and to deter initial violations.* They afford the *remedy* at law to persons *damaged* by having had to pay unlawfully high prices."

To apply the construction contended for by the OPA would defeat this purpose of Congress, because it would not permit a retailer who was compelled to pay an excessive and unusual price for his commodities, in order that he might remain in business, from bringing such a suit. While at the same time if the retailer attempted to recoup the unlawful price he had already been compelled to pay by charging an extra price he would be subject to a suit from the person to whom he sold it. In other words it would let the ultimate consumer bring a suit against the retailer, but would permit the OPA to usurp the right of the retailer to bring the same kind of a suit against the person who started the spiral of unlawful processes.

In view of what has been said, it is my conclusion that the intent of Congress can be carried out by construing the provision as if it were written thusly: "the person who buys such commodity for use or consumption may bring an action either for $50 or treble the amount, but cannot bring such action if the sale is made other than in the course of trade or business." This may not be consistent with the strict words of the Section. But this construction saves the Statute from invalidity and it makes it "possible" to *carry out the intent of Congress* in giving *to the person who was damaged,* i. e., the one "who has had to pay unlawfully high prices," the exclusive right to bring an action for *treble* the amount he was overcharged; it would take away from the public any incentive to induce a violation of the law for treble or greater profit. At the same time it permits the Ad-

ministrator and makes it his duty as a public official to seek out the black market operators and bring suits against them for their illegal operations. Moreover, it eliminates any need for any illegal search of a citizen's business, thus also saving Section 202(b) from being unconstitutional. The retailer or the consumer who has been overcharged already has the information upon which to base his suit and need not search his seller's record. So that this construction likewise would permit Section 202(b) of the Act to be fully used in aid of the enforcement of the Act, as the information obtained thereby would not be used against the person from whom the information was obtained by an inspection and copying of records.

For these reasons the Bee Ray action must be dismissed along with the instant case.