[Civ. No. 22297. First Dist., Div. Two. June 28, 1965.]

J. ELWOOD ANDRESEN, Plaintiff and Appellant, v. BOARD OF SUPERVISORS OF SANTA CRUZ COUNTY, Defendant and Respondent.

J. Elwood Andresen, in pro. per., for Plaintiff and Appellant.

William H. Card, County Counsel, Dennis J. Kehoe and Henry J. Faitz, Assistant County Counsel, for Defendant and Respondent.

BRAY, J.*—Plaintiff appeals from judgment denying his petition for writ of mandate.

## Question Presented

Is there substantial identity of purpose between a county water district and a sanitary district where the water district has not engaged in any sanitary service? This requires an interpretation of section 30065 of the Water Code.

## Record

Plaintiff is a resident and property owner in Santa Cruz County within the area of the proposed sanitary district. Under the provisions of section 6400 et seq. of the Health and Safety Code he circulated a petition for the formation of a sanitary district in the San Lorenzo Valley obtaining the necessary signatures thereto. He then presented it to respondent board of supervisors. On January 20, 1964, the date set for the public hearing of said petition, the board of supervisors refused to proceed with such hearing on the ground that the San Lorenzo Valley County Water District, a portion of which district is included in the proposed sanitary district, had not consented to the formation of the sanitary district.

Plaintiff then filed a petition in the superior court for a writ of mandate to compel the board of supervisors to proceed to form said sanitary district. At the hearing of said petition it was stipulated "that the San Lorenzo Valley County Water District has not to this date been engaged in sanitary service ... that this is solely a matter of law involving the interpretation of Section 30065 of the Water Code; ... that the lack of consent by the San Lorenzo Valley County Water District pursuant to this section is the basis of refusal by the Board of Supervisors of Santa Cruz County to act ... that if the Water District had furnished sanitary service to any of its inhabitants, then judgment should be rendered for defendant; but since this service was not so rendered, then the precise issue before the Court is whether the word 'purpose' as used in Section 30065 of the Water Code, means that this right to furnish sewer services must be exercised; and

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

if the word 'purpose' requires this actual exercise, then judgment should be rendered for plaintiff, but if the word 'purpose' means only the goal or object of the district, then judgment should be rendered for defendant.''

Evidence was introduced at the trial that on January 13, 1964, after the filing of the petition for formation of the sanitary district but before the action of the board of supervisors thereon, the board of directors of the water district had adopted a resolution (Res. No. 125), to the effect that the local economic situation made it desirable and in the public interest that the district exercise its powers as granted by state law over the construction, maintenance and operation of sanitary sewerage and sewage disposal facilities. This resolution authorized the employment of an engineer to prepare and assist in the application to the Housing and Home Finance Agency under Public Law 560 for funds to finance the necessary engineering studies in connection with the proposed exercise by the district of powers over sanitary sewerage and sewage disposal facilities by the district and to survey and report the problems in connection with the exercise of such power. A resolution of the water district dated October 22, 1963 (Res. No. 123), objecting and refusing to consent to the formation of the proposed sanitary district, was also introduced in evidence.

It appears that copies of Resolutions 123 and 125 were received by the board of supervisors prior to the January 20, 1964, hearing. However, the minutes of this meeting do not indicate that they were read to the board. Prior to this hearing there was filed with the board of supervisors a letter to that board directed by the secretary of the water district board calling attention of the supervisors to the fact that under section 30065 the consent of the water district board was required before the supervisors could proceed with the formation of the sanitary district, and that the water district board objected to the formation of the sanitary district and withheld its consent. The county counsel advised the supervisors at that meeting to refuse to proceed with the public hearing because of lack of consent of the water district.

The failure to read the resolution, if there was such failure, is immaterial. ██ The water district's consent was necessary because one of its purposes granted by statute was sanitary service even though the district was not then engaged in that service, hence Resolution No. 125 was unnecessary. ██ Section 30065 required the consent of the county water

district before the board could proceed with the formation of the sanitary district. Without such consent, whether the water district board passed a resolution or not, the board of supervisors could not proceed.

The trial court made findings of the facts above set forth and gave judgment in favor of respondent, in effect holding that the water district's *power* to operate sewerage facilities gives it an *identity of purpose* with a sanitary district proposing to include a part of its area.

### Identity of Purpose

Section 30065 of the Water Code provides: "The inclusion in, or annexation or addition to, a county water district, of all or any part of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such county water district.

"No public corporation or public agency *having identity of purpose or substantial identity of purpose* shall be formed partly or entirely within a county water district existing under the provisions of this code without the consent of such county water district.

"All county water districts heretofore formed partly or entirely within another county water district previously existing under the provisions of this code, with or without the consent of such previously existing county water district and for a purpose not then actually exercised, or to provide a service not then provided by said previously existing county water district, are hereby declared to be valid and legally existing districts." (Italics added.)

Section 31100 of the Water Code provides: "A district may acquire, construct, and operate facilities for the collection, treatment and disposal of sewage, waste and storm water of the district and its inhabitants and may contract with any public agency including but not limited to sanitation districts for sewer outfall facilities."

Section 31047 of the Water Code provides: "A district may control, distribute, store, spread, sink, treat, purify, recapture and salvage any water, *including sewage* and storm waters, for the beneficial use or uses of the district or its inhabitants or the owners of rights to water therein." (Italics added.)

Plaintiff takes the position that while section 31100 confers upon water districts the *power* to engage in the collection and

disposal of sewage, of necessity such could not become the *purpose* of a water district until such time as it evinced an intention to engage therein and that such intention must be evidenced before any petition to form a sanitary district within any part of the boundaries of said water district has been filed with the board of supervisors. Plaintiff is in error in this contention.

From the above quoted sections of the Water Code it is apparent that a proper method by which a county water district may conserve water is by the operation of sewer facilities in such manner that sewage may be beneficially used for this purpose and that the operation of sewerage facilities is one of the purposes for which such a district is formed even though the district at a particular time has not yet evidenced an immediate intention of carrying out such purpose.

Numerous California communities operate their sewage disposal facilities in such a manner as to create reusable water (Cal. Dept. of Pub. Works, Div. of Water Resources, Reclamation of Water from Sewage or Industrial Waste, pp. 31-38 (Dec. 1952)). The water is reclaimed both for immediate reuse and for restoration of underground water supplies (*id.*).

The view has been expressed that those agencies which may engage in waste collection and disposal and in the supplying of water for beneficial use may be particularly useful in waste water reclamation (University of Cal., Committee on Research in Water Resources, Legal Problems in Water Resources, p. 31 (1957)) "... without the intervention of any other agency, they can acquire a supply of water, distribute it to their consumers, pick it up when it appears as waste water after use, treat it, and then put it back in their water delivery system for re-use, repeating the process as many times as is feasible. Agencies with these powers include ... county water districts ..." (*id.*). It would therefore appear that because of the proven ability of sewage disposal systems to beneficially reclaim water from sewage, the operation of said systems is a part of the *purpose* of an existing county water district.

Thus, in the matter of constructing and operating sewers and sewage disposal systems a sanitary district formed under section 6400 et seq. of the Health and Safety Code is a public agency with substantial *identity of purpose* with an existing county water district within the meaning of section 30065 of the Water Code. Although made in support of a different legal proposition, the following statement is applicable to the instant case: "[T]he general purpose of a statute being

declared, the details provided for its accomplishment will be regarded as necessary incidents.'' (*Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159, 173 [28 Cal.Rptr. 724, 379 P.2d 28].)

We adopt the statement of the trial judge, Gilbert B. Perry: '' 'Purpose' is synonymous with the ends sought, an object to be attained, an intention, etc. 'Power' is the lawful ability to accomplish a given purpose. As these terms exist in the matter at bar they are coextensive. There is no indication in the statutes that any effort or activity exist to accomplish the enumerated purpose. To hold that such activity is a determining factor would be to place a premium on the starting time of performance and perchance the lack of careful planning.''

Moreover, here the water district did evidence an intention to provide sewerage facilities in its resolution. ''The word 'purpose' means 'that which a person sets before himself as an object to be reached or accomplished; the end or aim to which the view is directed in any plan, manner or execution.' '' (*In re McCoy* (1909) 10 Cal.App. 116, 129 [101 P. 419], quoting from Words and Phrases Judicially Defined.)

The fact that the resolution was adopted subsequent to the filing of appellant's petition for formation of a sanitary district is unimportant. It was filed prior to the time of any formation of that district. Such an agency is not formed until it has been favorably acted upon by the electors of the proposed district (see Health & Saf. Code, § 6400 et seq.). The requirement of section 30065 is that consent must be given before the new public agency is *formed.* The only qualification is that substantial identity of purpose must exist in order for the giving of consent to become necessary.

In 1957, when section 30065, Water Code, was originally enacted, it contained only the first two of its present three paragraphs. (Stats. 1957, ch. 1728, p. 3109, § 1.) In 1958, during its First Extraordinary Session, the Legislature amended section 30065 by adding the third paragraph of said section. (Stats. 1959, First Ex. Sess. 1958, ch. 45, p. 249, § 1.) The amendment was declared to go in effect immediately upon enactment (*ibid.,* § 2).

The Legislature added the third paragraph of section 30065 for the purpose of saving, with or without the consent of the Contra Costa County Water District, several other county water districts that were then existent within the boundaries of that county water district (*ibid.*). These water districts

were performing certain purposes of the Contra Costa County Water District which at that time were not actually being exercised by that district (*ibid.*). It is obvious that the Legislature considered the first two paragraphs of section 30065 as having the effect of not allowing the several water districts to continue to exist without the consent of the Contra Costa County Water District (*ibid.*), because of identity of purpose even though the Contra Costa County Water District was not then exercising such purpose. "Every statute and code section should be construed with reference to its purpose and the objects intended to be accomplished by it. The language will be so interpreted, if possible, as to aid the design and intent of the legislature and to effectuate the evident objects and purposes of the law. [Citation.]" (*In re Sekuguchi* (1932) 123 Cal.App. 537, 538 [11 P.2d 655].)

 From the fact that the third paragraph of section 30065 refers to "a purpose not then actually exercised" as well as the language of the entire section, it is deducible that the Legislature intended the second paragraph of section 30065 to be effective whether or not the purpose in question was being actually exercised by the county water district concerned.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.