[Civ. No. 870.    Fifth Dist.    May 17, 1968.]

CITY OF TAFT et al., Plaintiffs, Cross-defendants and Respondents, v. WEST KERN COUNTY WATER DISTRICT, Defendant, Cross-complainant and Appellant.

J. Richard Thomas for Defendant, Cross-complainant and Appellant.

Rex R. Mull for Plaintiffs, Cross-defendants and Respondents.

CONLEY, P. J.—The City of Taft, Taft Heights Sanitation District, and Ford City Sanitation District brought this suit against West Kern County Water District for declaratory relief alleging that they jointly own, operate and maintain facilities for the collection, treatment and disposal of sewage effluent in or near the City of Taft in Kern County; that they desire to sell or lease the substance to private persons, firms or corporations for treatment and processing with the resulting product of purified water to be used in steam-flooding operations in the oilfields. The complaint points out that the water district has notified the City of Taft that it objects to such proposed sale without the consent of West Kern County Water District as a prerequisite pursuant to the provisions of section 31053 of the Water Code. The plaintiffs declare in their pleading that the code section does not apply to the existent situation. The defendant's demurrer to the complaint was overruled and the water district filed an answer.

In its answer the defendant has denied the material allegations of the complaint and alleges four affirmative defenses as follows:

1) The first defense relied on under section 31053 of the Water Code is that the water district has not given its consent to the sale of the effluent or the water to be derived therefrom;

2) The second affirmative defense alleges that if the plaintiffs were permitted to sell the effluent as proposed there will be danger, through leakage, of contamination of the pure water handled and sold by the water district;

3) The third affirmative defense urges improper dissipation and donation of public funds; and

4) The fourth defense questions plaintiffs' capacity to sue; this defense was apparently not seriously urged at the pretrial conference or, later, and therefore it needs no further attention in this opinion.

Plaintiffs in turn demurred to the second and third affirmative defenses in the answer on the ground that such issues could not be raised by answer in a suit of this kind but should enter the litigation, if at all, through the filing of a cross-complaint. At the pretrial conference, it was stipulated that the defendant's first affirmative defense would be tried separately in a bifurcated trial; the issues involved are indicated by the following questions:

1) Had the plaintiffs authority to enter into an agreement jointly to own, operate and maintain facilities for the collection, treatment and disposal of sewage effluent?

2) Does Water Code section 31053 prevent the plaintiffs from selling or leasing effluent resulting from their sewage operation without the consent of the defendant?

3) And, if so, in what manner would such a prohibition affect the plaintiffs' right to sell said effluent under the joint operation?

This first group of issues was set down for trial before Honorable J. Kelly Steele. The issues which the defendant had sought to raise through the originally pleaded second and third separate defenses were by stipulation to be set forth in a cross-complaint to be filed by the defendant not later than 10 days after the trial court announced its decision on the first group of the bifurcated issues, and plaintiffs were to be entitled to answer or demur to that pleading within 10 days after its service and filing, with a further trial to follow.

After trial of the first group of issues, Judge Steele decided:

1) That the plaintiffs had properly entered into an agreement to own and operate and maintain facilities as set out in the complaint by virtue of the authority contained in the Joint Exercise of Powers Act, contained in sections 6500 et seq. of the Government Code and section 4843 of the Health and Safety Code;

2) That Water Code section 31053 does not prevent plaintiffs from selling or leasing the effluent resulting from the

sewage operation without the consent of West Kern County Water District for these reasons:

A) The plaintiffs would not be acting as a publicly-owned utility in selling or leasing the effluent;

B) The plaintiffs' proposed disposal of the effluent was not a service similar to that proposed by defendant in the sale or furnishing of so-called pure water to the same class of customers to whom plaintiffs proposed to sell or lease their effluent; and

C) No land within the defendant district was subject to the lien of a general obligation bonded indebtedness incurred by the defendant district for the purpose of selling or furnishing water to oil companies to be used by them for steam-flooding operations.

3) Section 31053 of the Water Code does not purport by its terms to prevent any of the plaintiffs from selling or leasing sewage effluent without consent of defendant.

Findings of fact and conclusions of law on the foregoing issues were filed.

Thereafter, in accordance with the stipulation of the parties, the West Kern County Water District filed a cross-complaint alleging that if cross-defendants were allowed to sell their sewage effluent, as proposed by them, the domestic water supply furnished by the cross-complainant would be contaminated to the detriment of the citizens within the boundaries of the West Kern County Water District; the cross-complaint asked for a permanent injunction restraining the cross-defendants from disposing of the sewage effluent as proposed.

A demurrer to the cross-complaint was filed and a motion to strike made. The motion to strike was denied, but the demurrer was granted with 15 days to amend; thereafter, an amended cross-complaint was filed and a demurrer to it was sustained with 10 days leave to amend. A second amended cross-complaint was served and filed to which a demurrer was interposed, alleging that the amended pleading did not state facts sufficient to constitute a cause of action, that there was a defect of parties cross-defendant in that the alleged users of the sewage effluent were not named, that the pleading was ambiguous, uncertain, and unintelligible and that it did not state facts showing that the cross-defendants were actually threatening to proceed to dispose of the sewage effluent in the

manner feared by cross-complainant. Judge Borton sustained the demurrer to the second amended cross-complaint on the ground of uncertainty as set forth in the demurrer in that there was no allegation of facts that any action was threatened or imminent, but that the averments were mere conclusions and the complaint sought to enjoin an idea rather than a threatened course of conduct. ██ Because counsel for the cross-complainant stated he could not allege any clearer cause, the court did not grant him leave to amend. The judgment of dismissal must be affirmed if the second amended cross-complaint is objectionable on any ground stated in the demurrer. (*Brumfield* v. *Crocker-Anglo Nat. Bank,* 185 Cal.App.2d 759 [8 Cal.Rptr. 591]; *Sutter* v. *Gamel,* 210 Cal.App.2d 529, 533 [26 Cal.Rptr. 880].) A judgment was filed on April 7, 1967, and on April 26, 1967, an amended judgment covering all issues. It held that California Water Code section 31053 did not prevent any of the plaintiffs from selling or leasing sewage effluent without the consent of defendant, and that as the second amended cross-complaint did not state facts warranting the issuance of an injunction it should be dismissed.

██ Appellant presents three issues on this appeal. The first claim is that the respondents do not have a right to sell their sewage effluent without the permission of the water district because (a) they are publicly owned utilities within the meaning of section 31053 of the Water Code, (b) they propose to provide a service within the meaning of that code section, (c) all lands within the West Kern County Water District are subject to a bonded indebtedness which was contracted, among implied reasons, for the purpose of furnishing water for steam-flooding operations, and (d) the status of respondents under their joint exercise powers agreements limit them to those powers held by sanitation districts.

The second and third points on appeal have to do with that part of the record involving the ruling on the demurrer to the cross-complaint; the appellant argues that the court improperly sustained the demurrer to appellant's second amended cross-complaint and that the important issue of public health presented by the second amended cross-complaint should not be disregarded or minimized even if there are questionable defects in the pleadings.

Section 31053 of the Water Code, which appellant claims to enunciate the rule of law barring the sought-after activity of

the plaintiffs, is as follows: "No publicly owned utility shall commence to provide any service for, on, or to any land within a county water district which is subject to the lien of a general obligation bonded indebtedness incurred by the district for the purpose of providing a service similar to that which the utility proposes to provide.

"However, a publicly owned utility may commence to provide service, otherwise prohibited, upon either of the following conditions:

"(a) If the board of directors of such a county water district shall by resolution permit such service; or

"(b) If any portion of such a county water district proposed to be served by the publicly owned utility in which the total number of registered voters residing therein exceeds 200, and in which at least two-thirds of the voters shall have voted at a special county water district election to permit such service. The election shall be called and held as an initiative measure pursuant to Section 30830."

It will be noted that the section does not apply by its specifically stated terms to "municipal corporations" (of which the City of Taft is one) or to "public districts" (to which the other two plaintiffs belong). Therefore, it is clear that unless the plaintiffs propose to operate a "publicly owned" utility, as the term is used in the code section, they are not included in the rule. The activity proposed by plaintiffs is neither that of providing water service or power, nor transportation service nor any other service usually connoted by the term "public utilities services." Plaintiffs operate a sewage system and they seek to sell the effluent to other persons. Such other persons will have to treat the effluent extensively for industrial purposes; this treatment would not be done by plaintiffs in whole or in part but by the vendees to whom the effluent is to be sold; clearly, under the ordinary meaning of language, plaintiffs would not be providing any service at all. *City of National City* v. *Fritz*, 33 Cal.2d 635, 637 [204 P.2d 7], indicates that "the construction and maintenance of a sewer system is not a 'public utility,'" and in the Public Utilities Act no mention is made of sewers as public utilities. (See also *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.*, 182 Cal.App.2d 176, 179 [5 Cal.Rptr. 783].) It is also clear from the evidence that plaintiff would not be suppliers of water to the public, and no one else other than the original vendees of the effluent could

demand ·from the plaintiffs the right of participating in the proposed disposal of the sewage effluent. The code section which we have quoted speaks in terms of providing a service; the plaintiffs do not propose to provide a service but only to sell the effluent.

In this connection, the Legislature long ago sensibly and properly enacted permission to organizations in the position of plaintiffs to lease or sell the effluent resulting from their necessary operation of a sewer system. Government Code section 37390 specifically provides that a city may lease sewage and sewage effluent; section 4744 of the Health and Safety Code gives a county sanitation district the right to sell or otherwise dispose of any water, sewage effluent, or fertilizer resulting from the operations of the sewage system, and section 4745 of the Health and Safety Code provides that a county sanitation district may construct, maintain and operate pipelines or other works necessary to conserve and put to beneficial use any water or sewage effluent recovered from the operation of the sewerage system.

The record shows that at the present time the plaintiffs are selling the effluent of their sewers for use in agriculture at $750 per annum and that the proposal which they have in mind for sale to an oil company or group of companies mentions the sum of $2,500 per annum as the price to be paid. Chester A. James, Director of the Kern County Public Works Department and General Manager of the Kern County Sanitation Districts, testified that the city council of Taft and the boards of directors of the sanitation districts would like to put the water involved in the effluent to the greatest beneficial use without being injurious to the health and safety of the people in the area.

It should be noted, also, that the water district does not deal in the operation of any sewer and does not contemplate initiating such use of its facilities. It presently furnishes pure water for use in some steam flooding of oil properties, but the record also shows that the water district does not have present facilities to furnish all water desired by potential customers. Mr. Jon P. Sanssing, General Manager of the West Kern County Water District testified that the first request made to the district by any oil company to supply water for steam-flooding operations was in the spring of 1964; before that time, the district did not supply water to any oil company for that purpose.

The bonded indebtedness of the district was initiated in 1963 for the acquisition of water company facilities and to have funds sufficient to engage in a capital improvement program on some of its transmission lines and pumps. The plaintiffs' city and sanitation districts were in existence long before that; and none of the bonded indebtedness of the West Kern County Water District was specifically contracted for the purpose of supplying water to the oil companies for steam-flooding operations. Under cross-examination, Mr. Sanssing admitted that oil companies would probably have to bear the cost of necessary expenditures for capital improvements to provide the water for steam-flooding operations and that this would cost approximately $3,000,000.

The judgment of the superior court, which is under appeal, therefore is justified, it seems to us, by a close reading of the sections of law claimed to be applicable on the following grounds: The sale of sewage effluent by an organization conducting sewage operations does not constitute a public utility; and the law specifically gives the right to an organization of the plaintiffs' stature to sell sewage effluent. (16 Cal. Jur.2d, Rev., Drains and Sewers, § 6, pp. 889-891.)

The second point decided in the latter half of the bifurcated litigation is that the amended cross-complaint does not state facts which would justify the issuance of an injunction, because it deals with a theoretical statement of ideas and not with a specific threat or proposal. The law of injunctions is extremely practical; it does not deal with anything but specific facts. (See *Davitt* v. *American Bakers' Union,* 124 Cal. 99 [56 P. 775]; *E. H. Renzel Co.* v. *Warehousemen's Union,* 16 Cal.2d 369 [106 P.2d 1]; 27 Cal.Jur.2d, Injunctions, § 60, pp. 180-181.) If, as and when the plaintiffs reach a formal agreement with purchasers of effluent, the courts may properly rule, if requested to do so, as to whether there should be an injunction to prevent such specific plan from being put into effect.

The third point, which concerns the public health and safety, also requires as an occasion for a ruling a specific plan and not mere theoretical allegations, which are not tied down to specific fact. (27 Cal.Jur.2d, Injunctions, § 61, pp. 181-184.) It is possible that there might be such a conflict in the conveyance of untreated effluent and the supplying of pure water to the public for drinking and other purposes that the sewerage proposal should be quashed by the courts. Public

health is of the highest importance and should be protected. On the other hand, modern science feels assured that sewage effluent can be treated so as to remove completely any danger to the public through its transmission or proper utilization. This is illustrated by what is said by Mr. Justice Bray in his opinion in *Andresen* v. *Board of Supervisors*, 235 Cal.App.2d 436, 441 [45 Cal.Rptr. 306], in which it is indicated: "Numerous California communities operate their sewage disposal facilities in such a manner as to create reusable water (Cal. Dept. of Pub. Works, Div. of Water Resources, Reclamation of Water from Sewage or Industrial Waste, pp. 31-38 (Dec. 1952)). The water is reclaimed both for immediate reuse and for restoration of underground water supplies (*id.*) "

The *Andresen* opinion contradicts the claim made by appellant that the health danger involved in the present allegations is of such magnitude that the court for this reason alone should reverse that part of the judgment affirming the order below sustaining the demurrer to the second amended cross-complaint.

The judgment is affirmed.

Stone, J., concurred.

Gargano, J., being disqualified, did not participate.

A petition for a rehearing was denied June 13, 1968. Gargano, J., did not participate therein. Appellant's petition for a hearing by the Supreme Court was denied July 10, 1968.