[Crim. No. 840. Second Appellate District, Division One.—October 3, 1921.]

## In re XENOPHON JONES.

[1] CRIMINAL LAW—DEPORTATION BY MEXICAN OFFICIALS—UNLAWFUL CONSPIRACY—EVIDENCE.—The facts that federal officers presented to Mexican officials proof that at the time of a certain person's entry into Mexico he was a fugitive from justice, having been convicted of a felony in the state of Oklahoma, and that thereupon such Mexican officials caused such person to be placed across the boundary line so that he might be subjected to arrest in the United States, do not show an unlawful conspiracy entered into between the officers of the separate governments with the purpose of causing such person to be kidnaped and illegally brought within the United States.

[2] ID.—IRREGULARITIES IN DEPORTATION PROCEEDINGS—HABEAS CORPUS.—Where a person convicted of a felony in a sister state flees to Mexico, irregularities in the administration of the law of Mexico whereby such person is placed outside the confines of that country and within that of this state, whereupon he is immediately subjected to arrest, will not entitle him to his release on *habeas corpus*.

[3] ID.—ERRONEOUS SEIZURE BY AGENT OF SISTER STATE—VOID WARRANT OF RENDITION. — Had the agent representing the sister state wherein such person was convicted of a felony gone into Mexican territory, seized such person and brought him into this state, and such person had then been subjected to arrest, a warrant of rendition issued by the Governor of this state would have been inoperative, because the condition of the law that such warrant may be issued only where a fugitive is "found" within the state would not have been satisfied.

PROCEEDING on Habeas Corpus to secure the release of a person held in custody as a fugitive from justice. Writ discharged and petitioner remanded to custody.

The facts are stated in the opinion of the court.

Jones & Weller, Dana R. Weller and Sample & Harden for Petitioner.

2. Right of person wrongfully brought into jurisdiction to be released on *habeas corpus*, note, 12 L. R. A. (N. S.) 225.

3. Jurisdiction to try prisoner forcibly or unlawfully brought within jurisdiction, notes, 14 Ann. Cas. 523; Ann. Cas. 1917D, 229.

Lawler & Degnan for Respondent.

JAMES, J.—Petitioner herein is held in custody as a fugitive from justice. Upon the demand of the Governor of the state of Oklahoma, the Governor of California has issued his warrant of rendition and the state officer of Oklahoma is ready to execute the process. There is no dispute as to the preliminary facts involved, nor any question as to the regularity in form and substance of the warrant issued by the Governor of California, except that it is insisted that petitioner was not, at the time of the issuance of said warrant, within the state of California, and that his presence herein was fraudulently and forcibly obtained without his consent. Petitioner was convicted of the crime of manslaughter in the state of Oklahoma and, without satisfying the judgment rendered upon his conviction, fled from that state and went to Tia Juana, in the republic of Mexico. He continued to reside at the place mentioned until officers of the Mexican government arrested him and forcibly placed him across the line and to a place within the state of California. An officer of the immigration department and another (Gershon) attached to the department of justice of the United States then took charge of petitioner, kept him under arrest, and he shortly was received into the custody of respondent here. It appears that one of the military officers in command and on duty at the international line informed Gershon that he had been called upon by the Mexican immigration officials to assist in the deportation of petitioner, and that he had ordered the arrest of petitioner and would deport him the same evening from Mexicali. The Mexican immigration office at Tia Juana, several days in advance of the day when petitioner was placed across the international boundary line, advised the witness Hanna, who was the United States immigration official to whom we have referred, that petitioner was to be deported from Mexico. Petitioner was in fact placed under arrest by Mexican soldiers, and taken with his automobile to a point some miles outside the town of Mexicali. The two United States officials mentioned, by agreement, were waiting across the line and petitioner was delivered by the Mexican soldiers over a bridge and upon United States territory. There was no interval of freedom allowed him from custody, for he

was immediately taken under arrest to a near-by California town and placed in jail. He protested both to the Mexican soldiers against being transported from the country and to the American officials against being subjected to arrest by them. The evidence further showed that some time prior to the deportation of petitioner from Mexico an officer from the state of Oklahoma had exhibited to Gershon, the department of justice agent, a warrant and proof of the fact that Jones had been convicted of manslaughter in Oklahoma and was wanted there as a fugitive from justice. Gershon had exhibited this documentary evidence to Mexican officials at Tia Juana. There was no evidence that any request was made by Gershon or the Oklahoma officer that the Mexican officials should deport petitioner or illegally or in anywise cause him to be placed across the boundary line so that he might be subjected to arrest in the United States. [1] Petitioner's contention is that there was an unlawful conspiracy entered into between the officers of the separate governments with the purpose of causing him to be kidnaped and illegally brought within the United States. Under such a state of facts he insists that he could not be deemed to have been "found within this state," as that term is used both in the federal constitution and the statute of California. Assuming that the facts sufficiently show the case contended for, we would readily agree with the conclusion drawn. However, we think that the evidence does not justify a finding of an unlawful conspiracy formed and executed with the purpose of bringing petitioner within the limits of the United States. So far as appears, the federal officers went no further than to present to Mexican officials proof of the fact that at the time of petitioner's entry into Mexico he was a fugitive from justice, having been convicted of a felony. The evidence fell short of showing in the least particular or degree any importunities or solicitations on the part of the American officials to induce the Mexican authorities to commit any improper act in the case of this petitioner. [2] Passing for a moment the question argued as to the authority of the Mexican officials to deport petitioner, we are quite clear that, assuming that such authority existed, the moment petitioner reached American soil he became subject to the extradition law as a fugitive from justice, and as having been "found" within the state of

California. It is earnestly contended that the officials of Mexico acted without authority in ejecting petitioner from their territory. As the law of Mexico governing such matters was not produced or shown in evidence, petitioner relies upon the presumption that that law will be deemed to be the same as that of the United States. He contends that there is no authority under that law to deport a person except upon due warrant issued and hearing had. He admitted that under the law of this country convicts may be excluded and also deported within three years from date of their entry into the country. (Immigration Law, 3 Fed. Stats. Ann., 2d ed., p. 637; U. S. Comp. Stats., sec. 4242 et seq.) We must assume, then, that ample authority existed, for the cause shown, to support an order that petitioner be deported from Mexico. For aught that appears, an order and warrant in due form may have been made authorizing the action taken, notwithstanding that petitioner says that none was exhibited to him. He further testified that he was allowed no hearing, and that may be conceded to be the fact, for want of any contradicting evidence. The matters of which he complains, as to the course of conduct on the part of Mexican officials, amount to irregularities in the administration of the law of Mexico, and the question as to whether the acts of the Mexican officials, in placing the person of petitioner outside the confines of their country, were sanctioned by that law, we think must be considered as immaterial here. Instances are not wanting, and a number are cited in text-books on extradition, where, outside of treaty obligations and in the absence of them, foreign governments have acceded to a simple request made upon them to deliver up or return to the requesting government persons charged with heinous crimes committed within the jurisdiction of the last-mentioned governments. The proposition is fully established by the authorities that in such cases, and assuming that the acts of the surrendering governments were irregular under their own law and procedure, the person surrendered could not question the regularity of such acts in the courts of the country having jurisdiction of the crime committed and to which such person may have been returned. This rule has been extended far enough to cover cases where citizens of the United States have by artifice caused a person who has fled from our jurisdiction to cross the line and

come within reach of state process. The law so established is in emphasis of the doctrine that there is given to no fugitive from justice the right to claim an asylum in a foreign country. In the case of *Ker* v. *Illinois,* 119 U. S. 436 [30 L. Ed. 421, 7 Sup. Ct. Rep. 225, see, also, Rose's U. S. Notes], this law is given full exposition and we here cite, as pertinent to the questions just discussed, the further decisions: *Ex parte Brown,* 28 Fed. 653; *Ex parte Wilson,* 63 Tex. Cr. 281 [36 L. R. A. (N. S.) 243, 140 S. W. 98].

[3] As already stated, had it appeared that the agent representing the state of Oklahoma had gone into Mexican territory, seized the petitioner, and brought him into the state of California, we would then conclude that a warrant of rendition issued by the Governor of this state would be inoperative, because the condition of the law that such warrant may be issued only where a fugitive is "found" within the state would not be satisfied. We have already determined that the evidence did not establish such a state of facts. The power under which petitioner was removed from Mexican territory was that of Mexican officials claiming to act under the right of the immigration laws of that country. Whether they did in fact act regularly under such laws remains to be questioned only by that government. When petitioner was delivered upon California soil he was then subject to arrest as a fugitive from justice and a warrant of rendition issued by the Governor of California became operative and effective for the purpose of authorizing the Oklahoma officer to remove him from the state.

The writ is discharged and petitioner remanded to the custody in which he was at the time of the return made herein.

Conrey, P. J., concurred.

Shaw, J., concurred in the judgment.