# CRIMINAL CASES.

## Wytheville.

## P. K. DICKENSON v. COMMONWEALTH.

June 19, 1924.

1. INTOXICATING LIQUORS—*Indictment for Manufacturing and Storing—Evidence of Finding of a Still.*—Indictment charged the accused with unlawful manufacturing and storing ardent spirits and with the illegal possession of ardent spirits at a place not his home. The trial court refused to strike out evidence relating to the finding of a still upon accused's premises.

   *Held:* That as the indictment charged the illegal manufacture of ardent spirits, this evidence manifestly tended to prove the guilt of accused and the ruling was plainly right.

2. INTOXICATING LIQUORS—*Sufficiency of Evidence to Support Verdict of Guilt—Good Character of the Accused.*—In the instant case the trial court refused to set aside a verdict of guilty and grant accused a new trial upon the ground that the verdict was contrary to the law and evidence. It was apparent that the contention that the trial court erred was based on the unblemished reputation of accused and his financial circumstances, coupled with his denial of guilt. This evidence showing improbability of guilt was uncontradicted, but the incriminating evidence introduced by the prosecution, from which a presumption of guilt arose, was neither contradicted nor explained.

   *Held:* That the evidence as a whole presented an issue of fact which was properly submitted to the jury and their verdict was conclusive.

Error to a judgment of the Circuit Court of Giles county.

*Affirmed.*

The opinion states the case.

*W. B. Snidow,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

Upon an indictment charging the accused with unlawfully manufacturing and storing ardent spirits, and with the illegal possession of ardent spirits at a place not his home, he has been convicted, fined $500.00, and sentenced to thirty days confinement in jail.

The facts shown by the Commonwealth are these: Two prohibition officers having been informed that a still was being operated in that neighborhood, went to the home of the accused, searched it, and found no ardent spirits in his dwelling or outbuildings, but did find about four gallons of corn whiskey, in glass cans, hidden in some brush over inside of his garden, a short distance from the dwelling, but not in sight thereof, at a point about twenty steps from the county road leading to West Virginia, which ran by his house. They saw the wife and boy of the accused coming from the garden where the whiskey was found. They also found a still situated about 400 yards from his residence, up the mountain and out of sight of his home, which appeared to have been recently operated, together with about 400 gallons of mash. A path led from the road by his dwelling to where the still was found, and there were fresh tracks along said path to and from the house to the still. None of these incriminating facts were denied.

Dickenson testified thus: "* * that he is fifty-eight years old, and that he was born in Giles county, and has lived there all of his life, and about twenty miles from the courthouse and down the river near the West Virginia line; that he owns 538 acres of land which he has inherited from his father and from his brother; that it is good land and is very valuable; that he lives on his farm and cultivates and grazes it; that he was at home when the prohibition officer came there and that they took him with them to the point where the ardent spirits were found, and that the same were found on his land, but that he did not put it there and did not know how it got there; that his premises were on the road leading to West Virginia and there was a great deal of travel along that road and someone may have placed the liquor there, but he was certain that he did not put it there and that he did not know who did place it there; that he had never made any whiskey in his life; that there was no necessity for him to do so as he had plenty of property and was not forced to such means of making a living; that they took him to the mountain with them and showed *them* the still and the mash; that this place was fully half a mile from his house and was away up out of sight and at a place where he very rarely ever went; the land being in forest and thickly overgrown with woods; that he did not know of the still being there; that it was not his and that he did not know whose it was nor how it came to be there; that it was there without his knowledge or consent; that he knew nothing of the mash and did not know how it came to be there; that someone could easily have placed it there without his knowing it and operated it without his ever knowing it, as he did not go up in the mountain very often."

His testimony as to his financial condition was con-

firmed; his farm was shown to be worth $25,000.00 to $30,000.00; four witnesses testified that he stood very high in the community; and it was shown that his reputation for veracity, integrity, sobriety, and law observance was very high indeed and unquestioned.

[1] 1. One ground of exception is that the court refused to strike out the evidence so far as it related to the finding of the still, but inasmuch as the indictment charged the illegal manufacture of ardent spirits, and this evidence manifestly tended to prove his guilt, the ruling was plainly right, and no citation of authority is needed to sustain it.

[2] 2. The other assignment of error is that the court erred in refusing to set aside the verdict and grant him a new trial upon the ground that the verdict is contrary to the law and the evidence.

It is apparent, then, that the contention is that because of his unblemished reputation and financial circumstances, coupled with his denial of guilt, the jury were bound to acquit the accused, because of the improbability of his guilt. This is impressive, and if we were triers of the facts, the competing arguments would be carefully reviewed. It should have, and doubtless did, greatly impress the jury. This evidence showing improbability of guilt was uncontradicted, but the incriminating evidence introduced by the prosecution was neither contradicted nor explained. Certain presumptions of guilt arise therefrom, and the evidence as a whole presents an issue of fact which was properly submitted to the jury. Under established rules, their verdict is conclusive here. *Gilreath* v. *Commonwealth*, 136 Va. 709, 118 S. E. 100; *Ramey* v. *Commonwealth*, 136 Va. 771, 117 S. E. 833.

*Affirmed.*

BURKS, J., dissents.