# Wytheville.

## TOM LOONEY v. COMMONWEALTH.

### June 24, 1926.

1. INTOXICATING LIQUOR—*Manufacturing—Evidence Held Insufficient to Sustain Conviction.*—In the instant case, a prosecution for manufacturing ardent spirits, the evidence connecting defendant with the crime was insufficient to support a verdict of guilty. That some person or persons had been operating a still at the place where an abandoned furnace was found was clear, but the guilty persons were not indicated. The many and diverging paths from the place tended to dispel rather than to confirm the suspicion against the accused. The place was not on defendant's land. There was evidence by reputable citizens to the effect that the reputation of accused for truth and veracity was good and accused denied all knowledge of the still.

2. INTOXICATING LIQUOR—*Evidence Not Sufficient to Support a Verdict of Guilty—Mere Suspicion.*—In prosecutions for violation of a prohibition law, the guilt of accused is difficult to establish and the conclusions of juries upon circumstantial evidence are generally accepted. They cannot, however, be accepted when they rest entirely upon suspicions which attach as certainly to every other person in the vicinity as to the accused. Suspicions which are confirmed by incriminating facts pointing certainly to the accused may convince of guilt, but suspicions which are unsupported by such incriminating facts remain mere suspicions and cannot support a conviction.

3. INTOXICATING LIQUOR — *Reputation of Accused — Particular Crime Charged.*—The reputation of accused as a violator of the prohibition law need not be confined to his reputation as to the particular crime charged.

4. NEW TRIAL—*Jury—Competency of Juror—Objection After Verdict— One of the Jurors a Member of the Grand Jury.*—In the instant case, after verdict, a motion to set it aside was made, because one of the jurors had been a member of the grand jury which found the indictment. While this objection would have been good, if made in time, it came too late after verdict.

5. INTOXICATING LIQUOR—*Act of 1924, Ch. 407, P. 593—Constitutionality of the Act—Special Law.*—In the prosecution for manufacturing ardent spirits, it was objected that Acts of 1924, ch. 407, p. 593, was invalid because at the end of section 73, Code of 1924, section 4675 (74), are

the words: "This act shall not apply to Bedford county." There was no merit in this objection as section 73 relates not to the crime of which the defendant is accused, but solely to the shipment of ardent spirits by druggists, while section 77, Code of 1924, section 4675 (78), in terms provides that the unconstitutionality of any section of the act shall not invalidate the entire statute. So that even if it be true that section 73 is invalid, this does not invalidate the entire statute nor the section under which the accused is prosecuted.

6. STATUTES—*Verbal Inaccuracies or Clerical Errors.* — Mere verbal inaccuracies or clerical errors in statutes in the use of words, or numbers, or in grammar, spelling, or punctuation, will be corrected by the court whenever necessary to carry out the intention of the legislature as gathered from the entire act.

7. STATUTES—*Construction—Words to which no Meaning can be Attached.*— While, as a general rule, every word in a statute is to be given force and effect, yet whenever a statute contains words to which no meaning at all can be attached, or at least no meaning in harmony with the legislative intent as collected from the entire act, such words will be treated as surplusage, and will be wholly disregarded in construction of the act.

8. STATUTES—*Construction—Inconsistent Saving Clauses.*—It is well settled that saving clauses which are inconsistent with the body of an act are rejected and disregarded as ineffective and void.

9. INTOXICATING LIQUORS—*Act of 1924, Ch. 407, P. 593—Constitutionality of Act—Special Law.*—In the instant case it was argued that the Acts of 1924, ch. 407, p. 593, did not apply throughout the State and was therefore invalid as a special act because at the end of section 73, Code of 1924, section 4675 (74), are these words: "This act shall not apply to Bedford county."

*Held:* That the words "this act shall not apply to Bedford county" must be rejected as surplusage.

Error to a judgment of the Circuit Court of Buchanan county.

*Reversed and remanded.*

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys General* for the Commonwealth.

PRENTIS, P., delivered the opinion of the court.

The accused was charged with unlawfully and felonious'y manufacturing ardent spirits, has been convicted and sentenced to pay a fine of five dollars and to six months imprisonment. He moved the court to set aside the verdict because contrary to the law and the evidence. His motion was overruled and this he assigns as error.

This is a fair summary of all of the evidence: The Commonwealth proved by the witness Short that he with the sheriff and two of the sheriff's deputies searched the home and premises of the accused thoroughly. He found in a loft upstairs "some malt corn being dried." It had sprouted but was about dry. There was a meat chopper in the smoke house on which malt corn had been ground and a half gallon jar which smelled of whiskey. About a half mile from the house (not on the premises but near the line) he found a place where there had been a still which had been recently used, but it was old and hard to tell just how long since, "and there was a hog sign around there." There were "two paths, one leading up the hill, back up the spur from the defendant's house, and another leading up the hill to the top of a hill where there is a haul road coming to the defendant's house." Another witness for the prosecution, a deputy sheriff, who was with Short, described these paths thus: "There was some paths or roads looked old, which had been traveled. One went up the hill back opposite direction from the defendant's house, and another up to the head of the hollow where we struck a road which come around to the defendant's house." "When you come up the hollow from the still place to the road where you come out to the defendant's house, the roads run each way along the top of the ridge." On cross-examination, after referring to the fact that the defendant had two sons living "up there," but not quite

so near to the place as the defendant, he said: "You go up the hollow across the hill and down on what is known as Dry Fork to one, and to the other you go from the top of the hill around the ridge the opposite direction from the way you go to come to the defendant's house." The sheriff, another witness for the prosecution, describes these roads thus: "There was some paths going up a hillside back leading away from the defendant's house, and one coming around this way and one going up the hollow." Another deputy sheriff, in this connection, says this: "We went back across the hill and found a furnace and some hog signs and paths leading in several directions."

Short and one of the deputies went back the next day and "searched the woods, fields, spurs and hollows carefully," but "could not find any still, still cap, worm, fermenters, vessels to be used and *in* which had been used for measuring or holding ardent spirits." They found some old still places which had not been used for a long time. He also stated that the malt corn which he found in the loft had not been used to manufacture whiskey, that before it could be so used it had to be ground and this had not been ground. He testified that he had talked to but few people "around where he lives," but he thought he knew his general reputation as a violator of the prohibition laws, and that his reputation is that he is a good man, but deals in liquor and violates the liquor laws. On cross-examination he said: "The general reputation of nearly everybody up there in that neighborhood is that they are moonshiners and violators of the prohibition laws. I mean up around where the defendant lives, his sons and those people on Dry Fork." He also said that he saw some "slop" at the place where the furnace was and the still had been.

Another witness for the Commonwealth, referring to

the fruit jar which Short sa d smelled of whiskey, said that they thought it had contained whiskey, "but could not tell for sure, me and Mr. Short," and ater that he could not say that there had been liquor in it, that it smelled of whiskey or like whiskey.    He calls the meat chopper a sausage grinder.

There was no contradiction of these facts, but the accused denied all knowledge of or interest in the still, showed that the place was not on his lands but about fifty or sixty yards away.    The wife of the defendant testified that the corn was crushed for chicken feed in her meat chopper, which was attached to a bench in front of her door, and had been so used; that being hard to grind she had soaked it to make it softer, and that as some of it had sprouted and was about to sour she had spread it out to dry to save it.    Several witnesses testified that the defendant, for several months previously, worked hard and regularly every day at his sawmill. His home was between the place at which a still had been operated and his mill, which was in the opposite direction.    Three witnesses, one of whom was a member of the board of supervisors, one a former sheriff of the county, and the other a justice of the peace, testified that his reputation for truth and veracity was good. This is all the evidence of significance; from which it appears that there is no conflict in the evidence.

[1, 2] That some person or persons had been operating a still at the place where the abandoned furnace was found is clear, but the guilty persons are not indicated.    The many and diverging paths tend to dispel rather than to confirm the suspicion against the accused. Can it then be fairly concluded therefrom that the presumption of innocence has been overcome and that the guilt of the accused has been established?    We think not.    We of course recognize the fact that guilt is diffi-

cult to establish in such cases, and that the conclusions of juries upon circumstantial evidence are generally accepted.    They cannot, however, be accepted when they rest entirely upon suspicions which attach as certainly to every other person in the vicinity as to the accused. Suspicions which are confirmed by incriminating facts pointing certainly to the accused may convince of guilt, but suspicions which are unsupported by such incriminating facts remain mere suspicions and cannot support a conviction.

The prosecution relies much here upon *Dickenson* v. *Commonwealth,* 139 Va. 565, 123 S. E. 332, and *Anthony* v. *Commonwealth,* 142 Va. 577, 128 S. E. 633, but a reference to those cases shows that upon the facts they can be clearly distinguished from this case.

The verdict of guilty of manufacturing ardent spirits, against the accused, is without evidence to support it, and the trial court should have set it aside and granted a new trial.    Therefore, the judgment will be reversed.

As the case may be retried, it is doubtless proper that we should refer to some of the other assignments of error.

[3] Objection is made to the evidence of Short as to the general reputation of the accused as a violator of the prohibition laws.    The point seems to be that such evidence should be limited to the particular crime charged, which in this case was the manufacture of ardent spirits. The sufficient answer is that the statute does not so limit it.    The evidence is admissible.    Its weight or value may be tested by cross-examination.

[4] After verdict, a motion to set it aside was made, because one of the jurors had been a member of the grand jury which found the indictment.    While this objection would have been good, if made in time, it came too late after verdict.    *Bristow* v. *Commonwealth,* 15 Gratt. (56 Va.) 647.

Another assignment of error assails the prohibition act of 1924, ch. 407, p. 593, because at the end of section 73 are these words: "This act shall not apply to Bedford county." It is argued from this that the act does not apply throughout the State, and it is therefore invalid because a special act, and in contravention of Constitution, section 63, which forbids the General Assembly to "enact any local, special or private laws for the punishment of crime."

[5] The sufficient answer is, that section 73 relates not to the crime of which the defendant is accused, but solely to the shipment of ardent spirits by druggists, while section 77 in terms provided that the unconstitutionality of any section of the act shall not invalidate the entire statute. So that even if it be true that section 73 is invalid, this does not invalidate the entire statute nor the section under which the accused is prosecuted.

The clause relating to Bedford county in section 73 is doubtless a mere inadvertence in the general revision of the prohibition statutes in 1924, containing 100 sections. It first appeared in an act amending section 15 of the 1918 act at the 1920 session. Acts 1920, p. 85. However appropriate in that act, it is entirely inappropriate and ineffective in the general law. Such inadvertences are not infrequent in legislative enactments and have been frequently considered and construed by the courts. Such mistakes are generally construed as surplusage and harmless.

[6] The general rule, which is fully supported by judicial expressions in the cases, is thus stated in 36 Cyc. 1126: "Mere verbal inaccuracies or clerical errors in statutes in the use of words, or numbers, or in grammar, spelling, or punctuation, will be corrected by the court whenever necessary to carry out the intention of the legislature as gathered from the entire act.

[7] "While, as a general rule, every word in a statute is to be given force and effect, yet, whenever a statute contains words to which no meaning at all can be attached, or at least no meaning in harmony with the legislative intent as collected from the entire act, such words will be treated as surplusage, and will be wholly disregarded in the construction of the act."

In Black on Interpretation of Laws, sec. 37, p. 77, we find this: "Clerical errors or misprints, which, if uncorrected, would render the statute unmeaning or nonsensical, or would defeat or impair its intended operation, will not vitiate the act; they will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the legislature is apparent on the face of the whole enactment."

And at section 39, the same author says: "It is the duty of the courts to give effect, if possible, to every word of the written law. But if a word or clause be found in a statute which appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning, or which is repugnant to the rest of the act and tends to nullify it, and if the statute is complete and sensible without it, such word or clause may be rejected as surplusage."

[8] It is well settled that saving clauses which are inconsistent with the body of an act are rejected and disregarded as ineffective and void.

Potter's Dwarris on Statutes and Constitutions states the principle thus, at p. 117: "The purview of an act may be qualified or restrained by a saving in the statute. A saving in a statute is only an exception of a special thing out of the general things mentioned in the statute. But a saving clause in a statute, where it is directly repugnant to the purview or body of the act, and cannot

stand without rendering the act inconsistent and destructive of itself, is to be rejected."

[9] Applying these reasonable rules of construction to this statute and this case, the words "this act shall not apply to Bedford county" must be rejected as surplusage in and as repugnant to the true intent and purpose of the statute.

The case will be remanded for a new trial, if the Commonwealth shall be so advised.

*Reversed and remanded.*