# Richmond

ARTHUR RICE HOWELL, ALIAS JACK J. DILLARD V.
COMMONWEALTH OF VIRGINIA.

January 12, 1948.

Record No. 3296.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan
and Miller, JJ.

The opinion states the case.

*R. O. Norris, Jr.* and *Charles E. Stuart,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The defendant has been convicted, under section 4769 of the Code, of bringing into Virginia property stolen by him in Maryland, and sentenced to serve three years in the penitentiary.

His sole complaint is that the Circuit Court of Westmoreland county, where he was arrested, did not have jurisdiction to try him. This point was made by a motion to dismiss the indictment, renewed at the conclusion of the testimony, and overruled. It is not claimed that the evidence of the substantive offense was insufficient. The basis of the motion was that the defendant was arrested on this charge while in jail in Westmoreland county on a different charge, and was, therefore, not "found" in Westmoreland county within the meaning of the statute.

The statute (Section 4769) provides: "Prosecution for offenses committed wholly or in part without and made punishable within this State may be in any county or corporation in which the offender is found or to which he is sent by any judge, justice, or court; and if any person shall commit larceny or robbery beyond the jurisdiction of this State and bring the stolen property into the same he shall be liable to prosecution and punishment for his offense in any county or corporation in which he may be found as if the same had been wholly committed therein."

The indictment charged that this defendant and another, on or about April 14, 1946, stole two power saws worth $1,400 in Anne Arundel county, Maryland, brought them into Westmoreland county, Virginia, and were found with them in their possession, contrary to the provisions of said statute.

The facts were agreed "incident to the issue raised by the motion of the defendant by counsel to dismiss this indictment on the ground that the Circuit Court of Westmoreland County, Virginia, had no jurisdiction in the premises under section 4769 of the Code of Virginia."

From the agreed facts and a certificate by the trial judge, it appears that the two saws were stolen in Anne Arundel county, Maryland, on or about April 14, 1946, and the accused sold these identical saws in Westmoreland county, Virginia, on May 1, 1946, to one Frank Watson.

Afterwards, on October 5, 1946, a power saw was stolen from the Arkay Lumber Company in Westmoreland county, Virginia. A warrant was issued charging the defendant with the larceny of this saw; he was arrested in Maryland on a fugitive warrant, waived extradition, was brought back to Westmoreland county and lodged in jail. He was later tried and acquitted on this charge, but while he was in jail awaiting trial (the motion to dismiss stated it was while he was under bail), he was indicted and arrested on the present charge of bringing into Westmoreland county the two saws stolen by him in Maryland.

As we understand defendant's contention, it is that when arrested he was in Westmoreland county against his will; that is, he was there in custody after being brought back from Maryland on the charge of theft committed in Westmoreland county, and was, therefore, not "found" in that county in the sense intended by the statute as a prerequisite to the court's jurisdiction.

The complete statute is the result of two legislative enactments. The first was chapter 10, Acts 1877-8, p. 313, carried into the Code of 1887 as section 3890, and which enacted the first clause of the present section ending with the word "court." That Act came under review in *Strouther* v. *Commonwealth*, 92 Va. 789, 22 S. E. 852, 53 Am. St. Rep. 852, where it was relied on to support a larceny indictment against the defendant in that case for stealing a horse in West Virginia and bringing it into the city of Winchester, Virginia. However, it was held that

the Act "was only intended to define the jurisdiction of our courts to try the offenses arising under certain special statutes, and has no application here." (92 Va. 790).

It was stated in that case that it was a settled principle of the common law in England that where property was stolen in one county, and the thief was found with the stolen property in his possession in another county, he could be tried in either county, notwithstanding the general rule that every prosecution for a criminal cause must be in the county where the crime was committed; that this exception grew out of a fiction of the law that where property has been feloniously taken, every act of removal or change of possession by the thief constituted a new taking and asportation; and as the right of possession, as well as the right of property, continues in the owner, every such act is a new violation of the owner's right of property and possession. "There is no principle, in respect to larceny, better settled than this, and it has received repeated sanction in this State. *Cousin's Case*, 2 Leigh (29 Va.) [708] 709." (92 Va. 791).

It was said, however, that this rule of the common law was never extended farther than to counties, and did not apply as between States; that a number of States had enacted laws for the punishment of such offenses and the question ought properly to be addressed to the Legislature.

The *Strouther Case* was decided in September, 1895, and the Legislature at its 1895-6 session added as an amendment the last clause of the present section 4769, with which we are here concerned.

It is to be observed that the clause so added does two things: (1) Makes it a crime to bring into this State property stolen in another State; and (2) prescribes the venue for the prosecution of the offense.

The constitutionality of the statute, so far as it declares the crime of larceny, is clear. It makes statutory the principle recognized in *Strouther* v. *Commonwealth*, *supra*, and restated in *Dunlavey* v. *Commonwealth*, 184 Va. 521, 35 S. E. (2d) 763, that every act of removal or change

of possession is a new violation of the owner's right. It is not an attempt to enforce the criminal laws of another State, but defines and punishes an offense committed in this State. Many States have similar statutes; others recognize the offense without the aid of a statute. 32 Am. Jur., Larceny, section 98, p. 1012.

Such statutes are very generally held constitutional against such objections as are advanced in this case—double jeopardy, trial by an impartial jury of the county, denial of process for summoning witnesses, and the like. See annotation to *Schultz* v. *Lainson*, 234 Iowa 606, 13 N. W. (2d) 326, 156 A. L. R. 858, at pp. 865, 886; Clark & Marshall on Crimes, 4th Ed., p. 671; Brill's Cyc. of Criminal Law, section 315, pp. 555-6; *State* v. *Ellis*, 3 Conn. 185, 8 Am. Dec. 175; *Worthington* v. *State*, 58 Md. 403, 42 Am. Rep. 338; *People* v. *Williams*, 24 Mich. 156, 9 Am. Rep. 119 (opinion by Judge Cooley).

The defendant contends that he was not "found" in Westmoreland county in the sense meant by the statute because he was not there voluntarily, but because he was brought there under arrest after waiver of extradition. It is well settled that a person brought into a State under extradition proceedings to answer for a specified crime may be arrested and tried for another and different crime. *Lascelles* v. *Georgia*, 148 U. S. 537, 13 S. Ct. 687, 37 L. Ed. 549. This principle is now statutory in Virginia. Code, section 5070bb, provides:

"After a person has been brought back to this State by, or after waiver of extradition proceedings, he may be tried in this State for other crimes which he may be charged with having committed here as well as that specified in the requisition for his extradition."

Defendant says this means crimes "over which a court of this State would have territorial jurisdiction." This prosecution was for an offense committed within the borders of the Commonwealth and her courts have full power to try such charges. See also, 22 C. J. S., Criminal Law, section 144, pp. 236-7; *Tracy* v. *State*, 25 Ala. App. 417, 147 So. 685; *Humphrey* v. *State*, 46 Ga. App. 720, 169 S. E. 53.

Section 2 of article 4 of the Federal Constitution provides for extradition of persons who shall flee from justice in one State "and be found in another State." In *Innes* v. *Tobin*, 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562, accused was extradited from Oregon to Texas, and there tried for murder and acquitted. Thereupon, Georgia demanded her rendition as a fugitive from that State. She resisted on the ground that not having fled to Texas voluntarily, but having been brought there from Oregon on extradition, she was not a fugitive from the State of Georgia to the State of Texas. It was held that she was a fugitive from the justice of Georgia and was "found" in Texas within the meaning of the Constitution. See also, *In re Jones*, 54 Cal. App. 423, 201 P. 944.

Defendant also insists that the clause of section 4769, being considered, fixes the venue for the trial of defendant in the county or corporation "not to which he has brought the stolen goods but where the officer armed with a warrant for his arrest 'finds' him;" and for that reason is invalid as against section 8 of the Bill of Rights.

If the statute intended to confer jurisdiction on the court of any county or corporation in which the defendant is apprehended, even though he did not there commit the crime with which he is charged, it would in that respect be invalid. *Cf. People* v. *Brock*, 149 Mich. 464, 112 N. W. 1116.

Section 87 of our Constitution provides that the jurisdiction of our courts shall be regulated by law "except so far as conferred by this Constitution." General jurisdiction of criminal cases is conferred on circuit courts by section 5890 of the Code. The territorial jurisdiction (in the sense of potential jurisdiction) so conferred is coextensive with the bounds of the whole State. *Morgan* v. *Pennsylvania R. Co.*, 148 Va. 272, 138 S. E. 566. At common law the proper venue of a crime was the county where it was committed and this rule has been generally recognized by courts or established by Constitutions. 14 Am.

Jur., Criminal Law, Section 232, p. 929. But, in the absence of a constitutional limitation, it is generally held that the Legislature has power to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed. *State* v. *Brown*, 103 Vt. 312, 154 A. 579, 76 A. L. R. 1029, and annotation beginning at p. 1034. There is nothing in the common law that is not subject to repeal by the Legislature unless it has been re-enacted in some constitutional provision. *State* v. *Lewis*, 142 N. C. 626, 55 S. E. 600, 7 L. R. A. (N. S.) 669.

We have no statute in Virginia prescribing the venue for criminal trials, but section 8 of our Constitution guarantees to an accused "a speedy trial by an impartial jury of his vicinage." In *Karnes* v. *Commonwealth*, 125 Va. 758, 99 S. E. 562, 4 A. L. R. 1509, it was held that "the true construction of the word *vicinage* as used in the Constitution is that it corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid." (125 Va. 762).

Hence, the usual venue in Virginia for the trial of a criminal case is the county or city where the crime is charged to have been committed. But, as pointed out in *Ruffin* v. *Commonwealth*, 21 Gratt. (62 Va.) 790, this provision of the Constitution must be given a reasonable construction consistent with other provisions, such as that for an impartial jury, permitting statutes providing for change of venue, a jury from another county and similar legislative provisions.

In this case the indictment alleged and the evidence established that the accused brought the stolen property into Westmoreland county, where he was tried, and he was, therefore, indicted and tried in the county in which he committed the crime. The jurisdiction of the court of that county did not depend upon the fact that he was apprehended in that county. That court had jurisdiction of the offense under the general provisions of the law.

Nor do we think that section 4769 of the Code limits jurisdiction to the county where the defendant is appre-

hended. In view of section 8 of the Constitution, the provision of the statute in question could not be upheld if it undertakes to provide that a defendant may be tried for the offense it defines in any county in which he is found, regardless of whether he committed the crime in that county.

The clause of section 4769 declares the crime when a person brings into the State property he has stolen outside of the State, and provides that he may be prosecuted for the offense "in any county or corporation in which he may be found as if the same had been wholly committed therein." There are two steps in the crime—the stealing out of the State, and the bringing in of the stolen property. We think that what was intended by the statute (although it may be conceded that more apt words could have been chosen to convey that meaning) was to provide a venue for the prosecution in any county into which the defendant brought the stolen goods, to the same extent as if he had stolen the goods in that county; i. e., as if the crime "had been wholly committed therein."

If the Legislature had intended to limit the prosecution literally to the county or city where the defendant is apprehended, the statute should have read "in *the* county or corporation" in which he may be found. He could be found, in the sense of being apprehended, in only one county. The statute clearly has in view more than one place of venue. The crime continues and accompanies the defendant into every county into which he goes with the stolen property. It does not continue into a county where the defendant goes without the stolen property. He commits no crime by being there unless he takes the stolen property with him. Considering the whole statute, we conclude that its true meaning is that venue is given in any county in which the defendant may be found to have committed the offense by bringing in the stolen goods, to the same extent as if the crime "had been wholly committed" in that county.

One of the meanings of the word "found" given

in the dictionaries is "to have discovered" by or through any of the senses.

This defendant was in fact "discovered" to have been in Westmoreland county at the time he there sold the stolen property. Unless it was the intention of the statute to give the word that meaning, it would not have been possible to prosecute the defendant at all if he had left the State before being arrested, even though he had taken the stolen property through a dozen counties. He could not then have been prosecuted anywhere because there would be no county in which he could be "found," and he could not be extradited for the crime which the statute denounces, because his liability to punishment would depend on his being "found" in a county or city of the Commonwealth.

If the language of the statute, "in any county or corporation in which he may be found," is susceptible of the meaning urged by the defendant, we are warranted in restricting it to mean "in any county or corporation in which he may be found to have committed the offense," and thus keep the provision within constitutional limitations, because in fact the statute does not depend for its vitality upon the venue provision. As stated, it declares the crime, and the venue for the prosecution of that crime is provided for by the general law. If "found" in the statute be construed to mean only any county or corporation in which the defendant is apprehended, it is invalid, and may be rejected as surplusage, without prejudice to the defendant in this case who was in fact both "found" and prosecuted in the county in which he committed the crime. *Cf. Looney* v. *Commonwealth*, 145 Va. 825, 133 S. E. 753.

The judgment complained of is

*Affirmed.*