PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HERBERT G. FISHER,
            *Plaintiff-Appellant,*

v.

CHARLES E. KING; CONRAD
SPANGLER, Director, Division of
Mineral Mining,
            *Defendants-Appellees.*

No. 99-6837

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-98-754-7)

Argued: September 28, 2000

Decided: November 14, 2000

Before LUTTIG and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Luttig and Judge King joined.

---

## COUNSEL

**ARGUED:** Wendy Michelle Marantz, Appellate Litigation Program,
GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C.,
for Appellant. Edward Meade Macon, Senior Assistant Attorney General, Richmond, Virginia, for Appellee Spangler; Jeff Wayne Rosen,

ADLER, ROSEN & PETERS, P.C., Virginia Beach, Virginia, for Appellee King. **ON BRIEF:** Steven H. Goldblatt, Director, Audrey I. Benison, Student Counsel, Thomas Curley, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Mark L. Earley, Attorney General, Judith Williams Jagdmann, Deputy Attorney General, Gregory E. Lucyk, Senior Assistant Attorney General, Richmond, Virginia, for Appellee Spangler; Lisa Ehrich, ADLER, ROSEN & PETERS, P.C., Virginia Beach, Virginia, for Appellee King.

---

## OPINION

HAMILTON, Senior Circuit Judge:

On January 2, 1987, Herbert Garrison Fisher (Fisher), then a resident of Gloucester County, Virginia, called 911 and reported to an emergency dispatcher that his wife, Kathryn Ann Youngs Fisher (Mrs. Fisher), had fallen off a pier into the Ware River. *See Fisher v. Commonwealth*, 431 S.E.2d 886, 887 (Va. Ct. App. 1993). The pier was located near a cottage the couple rented as a residence. *See id.* Responding emergency personnel found Mrs. Fisher's lifeless body floating in the Ware River within an hour from the time Fisher had first placed the 911 call. *See id.*

Following a jury trial in Gloucester County Circuit Court, on May 10, 1991, Fisher was convicted of second degree murder of Mrs. Fisher and sentenced to a term of twenty years' imprisonment. The original tape recording of Fisher's 911 call was played in open court during the trial and entered into evidence as "Exhibit 61." A verbatim transcript of Fisher's 911 call was also entered into evidence. Fisher has a copy of this transcript.[1]

On February 22, 1996, Fisher directed a written request under the Virginia Freedom of Information Act (VFOIA), *see* Va. Code Ann.

---

[1]The tape was also admitted into evidence in a criminal proceeding against Fisher in 1990. The record does not reflect further details about this proceeding.

§ 2.1-342 (Michie Supp. 2000), to the Clerk of the Gloucester County Circuit Court, Charles King (King), requesting that King give him physical possession of the original tape recording of his 911 call known as Exhibit 61. Of relevance here, the VFOIA provides that, except as otherwise specifically provided by law, "all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records." *See id.* § 2.1-342(A).

In May 1997, King denied Fisher's VFOIA request on the basis that a recent amendment to the VFOIA, *see* Va. Code Ann. § 2.1-342(D) (Michie 1997), specifically denied rights under the VFOIA to all persons incarcerated in Virginia.[2] King relied upon the VFOIA's Prisoner Exclusion Provision to deny Fisher's VFOIA request, even though the provision was not effective until July 1, 1997. Notably, however, King continues to rely upon the VFOIA's Prisoner Exclusion Provision to deny Fisher's VFOIA request until this day.

On December 11, 1998, Fisher, proceeding *pro se*, filed this § 1983 action against King in his individual and official capacities, *see* 42 U.S.C. § 1983, in the United States District Court for the Western District of Virginia. Fisher alleged violations of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See* U.S. Const. amends. I & XIV, § 1. He sought both declaratory and injunctive relief. Specifically, Fisher sought a declaration that the VFOIA's Prisoner Exclusion Provision

---

[2]The amendment specifically provided, in pertinent part, as follows:

> No provision of this chapter shall be construed to afford any rights to any person incarcerated in a state, local or federal correctional facility . . . . However, this subsection shall not be construed to prevent an incarcerated person from exercising his constitutionally protected rights, including, but not limited to, his rights to call for evidence in his favor in a criminal prosecution.

Va. § 2.1-342(D) (Michie Supp. 1997). In 1999, Virginia Code § 2.1-342(D) was recodified without change at Virginia Code § 2.1-342.01(C), *see* Va. Code Ann. § 2.1-342.01(C) (Michie Supp. 1999). Throughout this opinion, we will refer to the 1997 amendment excluding persons incarcerated in Virginia from enjoying rights under the VFOIA as "the VFOIA's Prisoner Exclusion Provision."

is unconstitutional and an injunction directing King to "release" to his (Fisher's) designated agent the original tape recording of his 911 call for copying and inspection.[3] (J.A. 10).

King filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). King argued: (1) the district court should decline subject matter jurisdiction under the *Burford* abstention doctrine, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); and (2) Fisher did not suffer a constitutional violation.

The district court converted King's dismissal motion to one for summary judgment because the district court considered materials outside the pleadings. *See* Fed. R. Civ. P. 12(b), 56. The district court rejected King's argument regarding *Burford* abstention, but granted summary judgment in favor of King on the merits. This timely appeal followed.

On appeal, Fisher contends that, as applied to him after its effective date, the VFOIA's Prisoner Exclusion Provision violates the First Amendment. He also contends the VFOIA's Prisoner Exclusion Provision is facially unconstitutional.[4] Finally, Fisher contends that

---

[3]In his complaint, Fisher also alleged that he made an unsuccessful request of Conrad Spangler, the Director of Virginia's Division of Mineral Mining, for documents related to a 1996 mining accident involving a man named Eric Bauden and a mining operation owned by the James River Limestone Company. On appeal, Fisher has voluntarily abandoned all causes of action against Spangler. Thus, this opinion mentions Spangler no further.

[4]An overbreadth facial challenge to a statute is made when a challenger argues that an otherwise valid law might be applied unconstitutionally in a specific context. *See generally Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 120 S. Ct. 483, 488-89 (1999). If a facial challenge is upheld, the sovereign cannot enforce the statute against anyone. *See Board of Trustees v. Fox*, 492 U.S. 469, 483 (1989). On the other hand, an "as-applied" challenge consists of a challenge to the statute's application only to the party before the court. *See generally City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758-59 (1988). If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. *See id.*

King's continued denial of his VFOIA request violates the Equal Protection Clause of the Fourteenth Amendment.

We affirm on the following bases: (1) Fisher, as a member of the general public, does not have a First Amendment right of physical access to the original tape recording of his 911 call, and therefore, his "as-applied" challenge under the First Amendment fails; (2) the VFOIA is an access statute, and therefore, Fisher cannot maintain a facial overbreadth challenge under the First Amendment; and (3) Fisher, as a member of the general public, does not have a First Amendment right of physical access to the original tape recording of his 911 call, nor has he shown that King granted physical access to the original tape recording of his 911 call to any other person, and therefore, Fisher cannot prevail on his equal protection claim.

I.

As a threshold matter, King continues to argue that the district court should have declined subject matter jurisdiction under the *Burford* abstention doctrine.

We conclude the *Burford* abstention doctrine does not require dismissal of Fisher's § 1983 action. In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court held that although a federal district court sitting in equity possesses subject matter jurisdiction over a civil action, it may, in its sound discretion, refuse to exercise such jurisdiction in certain circumstances if abstention is necessary to show "proper regard for the rightful independence of state governments in carrying out their domestic policy." *Id.* at 318 (internal quotation marks omitted). Accordingly, "abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Belloti v. Baird*, 428 U.S. 132, 146-47 (1976) (internal quotation marks omitted).

Here, *Burford* abstention is inappropriate. The VFOIA's Prisoner Exclusion Provision is not susceptible to a limiting construction avoiding Fisher's constitutional challenges. The provision is a straightforward blanket exclusion. Moreover, the provision is not

affected for purposes of Fisher's § 1983 action by its attendant savings clause for constitutionally protected rights because the language of the savings clause is repugnant to the previous exclusionary language. *See Looney v. Commonwealth*, 133 S.E. 753, 755 (Va. 1926) ("It is well settled that saving clauses which are inconsistent with the body of an act are rejected and disregarded as ineffective and void."); *see also* 2A Norman J. Singer, *Sutherland on Statutory Construction* § 47:12 (6th ed. 2000). In sum, the district court correctly determined that abstention under *Burford* was not appropriate.

## II.

We next address Fisher's as-applied challenge under the First Amendment to the VFOIA's Prisoner Exclusion Provision.[5]

In relevant part, the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This prohibition is made applicable to the States by the Fourteenth Amendment. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 245 n.10 (4th Cir. 1999). Fisher contends this prohibition guarantees him, as a member of the general public, physical access to the original tape recording of his 911 call that was entered into evidence during his two criminal trials.[6] Therefore, Fisher contends, the First Amendment compels King to release the tape to his designated agent for copying and inspection. According to Fisher, the VFOIA's Prisoner Exclusion Provision unconstitutionally bars such release.

---

[5]We note at the outset of this discussion that Fisher has standing under Article III of the Constitution to maintain this suit. Specifically, Fisher has sufficiently shown: (1) injury in fact (lack of possession of the requested tape); (2) causation (King continues until this day to deny Fisher physical access to the tape on the basis of the VFOIA's Prisoner Exclusion Provision); and (3) a substantial likelihood that the requested relief will remedy the alleged injury in fact (release of the tape will remedy Fisher's alleged injury). *See Vermont Agency of Natural Resources v. United States*, 120 S. Ct. 1858, 1861-62 (2000) (listing the three essential elements of standing).

[6]Notably, Fisher does not claim any heightened right of access to the tape under the First Amendment as compared to other members of the general public on account of the tape being admitted into evidence at his two criminal trials.

We begin our analysis of Fisher's as-applied challenge by acknowledging the general proposition that the First Amendment provides the general public a right of access to criminal trials, including access to documents submitted in the course of such trials. *See In re Time, Inc.*, 182 F.3d 270, 271 (4th Cir. 1999). The precise question presented by Fisher's as-applied challenge, however, is whether the First Amendment provides him, as a member of the general public, a right of physical access to an audio tape that was played in open court in a criminal trial, admitted into evidence, and for which he possesses a complete verbatim transcript.[7]

Under the Supreme Court's decision in *Nixon v. Warner Communications*, 435 U.S. 589 (1978), the answer to this question is no. Of relevance here, in *Nixon*, certain members of the press argued that the First Amendment's guarantee of freedom of the press required the District Court for the District of Columbia to release to them for copying certain audio tapes that had been admitted into evidence during the criminal trial of several former advisors to President Richard Milhous Nixon. The Supreme Court flatly rejected this argument, holding that, under the circumstances, the First Amendment did not provide the general public a right of physical access to the tapes, and the press generally has no greater right to information about a trial superior to that of the general public. *See id.* at 608-09. The circumstances were that no restrictions were placed upon press access to, or publication of any information in the public domain (*i.e.* the press— including reporters of the electronic media—was permitted to listen to the tapes and report on what was heard); reporters also were furnished transcripts of the tapes, which they were free to comment upon and publish; the contents of the tapes were given wide publicity by all elements of the media; and there was no question of a truncated flow of information to the public. *See id.* at 609.

In the present case, the original tape recording of Fisher's 911 call was played in open court at both his criminal trials, and he possesses a copy of the verbatim transcript that was filed in open court during those trials. Thus, Fisher, as a member of the general public, has been permitted access to all information about the tapes in the public

---

[7]Fisher makes no claim that the transcript of Exhibit 61 in his possession is inaccurate.

domain. Under these circumstances, *Nixon* compels us to hold that the First Amendment does not require King to release to Fisher, as a member of the general public, the original tape recording of his 911 call.

Fisher argues that *Nixon* is inapplicable because the audio tapes at issue in that case contained recordings of private conversations of a sitting President and his senior advisors, while the audio tape of his 911 call contains the recordings of ordinary citizens. We find this distinction to be one without a difference. Furthermore, nothing in the Court's discussion of the First Amendment issue in *Nixon* even remotely suggests that its holding turned upon the identity of the persons recorded or the nature of the speech involved.

Fisher alternatively argues that the Supreme Court's holding on the First Amendment issue in *Nixon* is no longer good law in light of a succession of four Supreme Court cases post dating it. The oldest is *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (plurality opinion), in which the Court first held that the general public and press' rights to attend criminal trials are implicit in the guarantees of the First Amendment. *Id.* at 580. Thus, an order excluding the general public and press from a criminal trial violates the First Amendment if no articulated overriding interest for closure exists. *See id.* at 581. The next case in time came two years later. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 611 (1982). In *Globe*, the Court relied upon *Richmond Newspapers* to strike down as violative of the First Amendment's qualified right of general public and press access to criminal trials a state statute imposing mandatory exclusion of the general public and press from trials involving young victims of sex crimes. *See id.* at 611. Two years after *Globe*, the Court decided *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*). In *Press-Enterprise I*, the Court held that the general public and press' qualified right of access to criminal trials covers proceedings for the *voir dire* examination of potential jurors. *See id.* at 512-13. And two years later, in *Press-Enterprise v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*), the Court held the same for preliminary hearings, including access to copies of the transcript of such hearings. *See id.* at 13-14.

While collectively these four cases stand for the proposition that the general public and press enjoy a qualified right of access under

the First Amendment to criminal proceedings and the transcripts thereof, neither collectively nor individually do they have direct application to the case before us. *Nixon* is specifically on point. In such a circumstance, we are bound to follow *Nixon*. *See also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (rejecting the proposition that other courts should ever conclude that the Supreme Court's recent cases have, by implication, overruled an earlier precedent); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."). Thus, on the controlling authority of *Nixon*, we hold that Fisher's qualified right of access, as a member of the general public, to criminal proceedings under the First Amendment has not been violated by King's refusal to release to Fisher's designated agent the original recording of his 911 call.

We note that our holding on this issue is in accord with the Eighth Circuit's decision in *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996). In *McDougal*, the court relied upon *Nixon* to hold that the general public and press' right of access to public information under the First Amendment does not extend to physical access to the videotape of President William Jefferson Clinton's deposition testimony that was offered in a trial in an underlying criminal case where members of the general public, including the press, were given access to the information contained in the videotape and, thus, received all information in the public domain. *See McDougal*, 103 F.3d at 659.

In sum, Fisher's as-applied challenge under the First Amendment fails.

### III.

We next address Fisher's contention that regardless of whether he has a First Amendment right of physical access to the original audio tape recording of his 911 call, the VFOIA's Prisoner Exclusion Provision is violative of the First Amendment because it restricts prisoner access to information to which the general public is guaranteed access under the First Amendment. This contention mounts a facial over-

breadth challenge to the VFOIA's Prisoner Exclusion Provision, which under *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 120 S. Ct. 483 (1999), is foreclosed because the VFOIA is an access statute.

In *United Reporting*, a private publishing company brought a facial overbreadth challenge to a California statute that required a person requesting an arrestee's address from state or local law enforcement to declare that the request was being made for one of five prescribed purposes and that the address would not be used directly or indirectly to sell a product or service. *See id.* at 486-87. Because the publishing company was in the business of charging a fee for providing its customers, such as insurance companies and driving schools, with the addresses of the recently arrested, it could not legally obtain the addresses of California arrestees under the statute at issue. *See id.* The publishing company contended the statute unduly burdened commercial speech in violation of the First Amendment. *Id.* at 486.

The Supreme Court held that the publishing company could not mount a facial overbreadth challenge to the statute at issue because the statute did not abridge anyone's right to engage in speech nor hang the threat of prosecution over anyone's head but, as here, simply regulated access to information in the government's hands. *See id.* at 489. The Supreme Court reiterated that the allowance of a First Amendment overbreadth challenge to a statute is an exception to the traditional rule that "'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.'" *Id.* at 488 (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)). The overbreadth doctrine, the Court reminded, "is strong medicine" that should be employed "only as a last resort." *Id.* at 488 (internal quotation marks omitted). Accordingly, "[f]acial overbreadth adjudication is an exception to [the Court's] traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws." *Id.* at 489 (internal quotation marks omitted).

Based on the reasoning set forth in *United Reporting*, the VFOIA's Prisoner Exclusion Provision is similarly not subject to a facial over-

breadth challenge because it does not carry the threat of prosecution for violating the statute and it does not restrict expressive speech, but simply regulates access to information in the possession of Virginia state agencies. In this regard, we find no material differences between the VFOIA's Prisoner Exclusion Provision and the California statute at issue in *United Reporting*. Accordingly, Fisher's facial overbreadth challenge under the First Amendment fails.

## IV.

Fisher lastly challenges the district court's rejection of his equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has stated that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Fisher contends that King violated his Fourteenth Amendment right to equal protection under the law by denying his VFOIA request. Given that the general public does not have a First Amendment right of physical access to the original tape recording of Fisher's 911 call, Fisher cannot maintain that he was denied equal protection under the law with respect to the First Amendment. Furthermore, even ignoring the fact that Fisher may have lesser First Amendment rights given his status as a prisoner, he has not shown that he otherwise has been treated differently under the law. Specifically, Fisher has not shown that any other person, prisoner or nonprisoner, requested and received physical access to the original tape recording of his 911 call. Accordingly, under the plain language of the Equal Protection Clause, his equal protection claim fails.

## V.

In conclusion, we affirm the judgment entered in favor of King.

*AFFIRMED*